WESTERN TRAVELERS' ACCIDENT ASSOCIATION V. EDGAR H.
HOLBROOK.*

FILED JULY 1, 1902.   No. 12,078.

Commissioner's opinion, Department No. 3.

1. **Personal Injury:** PRESUMPTION OF ACCIDENT. When it has been
   sufficiently established by circumstantial evidence that a person
   has suffered injury by reason of falling from a dangerous
   height, it will be presumed, in the absence of evidence to the
   contrary, that the fall was accidental.

2. **Evidence.** Evidence examined, and found to uphold the finding
   and judgment of the district court.

ERROR from the district court for Douglas county.
Tried below before BAXTER, J.  *Affirmed.*

*O'Neill & Gilbert,* for plaintiff in error.

*James H. McIntosh, contra.*

AMES, C.

The plaintiff in error, hereafter called the defendant, is
a mutual accident insurance company, incorporated un-
der the laws of this state and having its principal place of
business at Omaha.   It had issued to the defendant in
error, hereafter called the plaintiff, a policy of insurance,
in which it undertook to indemnify him at the rate of $25
per week, for not exceeding fifty-two weeks, during which
he should be totally disabled by reason of bodily injuries
received through external, violent and accidental means.
On the 8th day of January, 1898, while the contract was in
force, the plaintiff suffered an injury consisting of the
breaking of both his legs, and totally disabling him until
some time in February, 1899.   The contract avoided the
liability of the company unless notice of the accident was
given to it within fifteen days after the occurrence.   This
notice was given.   It was also provided that such liability

*Rehearing allowed.  Reaffirmed.  See opinion on page 475.

should be avoided unless the assured should "within thirty days after the said total disability ceases, furnish the executive board with affirmative proofs in writing, of the duration of the disability, and of the nature, cause and effect of the injury sustained, and such other proofs as may be required by the executive board." Shortly after the happening of the accident the company learned of the nature and extent of the plaintiff's injuries through an examination of them, at its request, by a physician. On the 26th of January, 1898,—less than three weeks after the happening of the accident,—the company sent to the plaintiff by mail certain printed forms, enclosed with a letter saying: "We hand you herewith blanks for final proofs which you will please return properly executed as soon as you have recovered." The blanks thus furnished were filled out in writing and signed by the plaintiff's attending physician, as was indicated to be required, and sent to the association in such time as to reach it on the 20th day of January, 1899, some days before the disability ceased, and twelve days after the fifty-two weeks term of indemnity had expired. The nature of the final proofs required was not specified in the contract of insurance, and this physician's statement was a full compliance with all the demands in that respect which had been made upon the plaintiff at the time it was made, and was received by the defendant. Demands for further proofs were, however, made by the company, which were complied with by the plaintiff, but on account of delays unavoidable, by the plaintiff, in the transmission of documents through the mails, did not reach the company until some time in February, more than thirty days from the expiration of the term of indemnity, but within thirty days from the date of the cessation of disability. The plaintiff, however, answered all correspondence promptly, and is in no respect responsible for delay. The foregoing facts are undisputed, and we think dispose of one of the defenses to this action. The plaintiff had no means of knowing what final proofs would be required of him until he was notified with respect

thereto by the company. He was thus notified by the letter of January 26, 1898, and until further informed, had a right to rely upon that letter as stating the whole requirement of the company in that regard. The proof required by that letter was sufficient, unless, having had an opportunity so to do, he had neglected to furnish additionally demanded proofs within the specified time. There is not only no evidence of such neglect, but the evidence establishes the contrary beyond the possibility of reasonable controversy. This conclusion makes it unnecessary to decide whether the plaintiff had until thirty days after the cessation of his disability within which to furnish final proofs, according to the letter of his contract, or whether he was bound to furnish them within thirty days after the term of indemnity expired, as the defendant contends.

A further question is as to whether the injury was accidental. The contract contained the following clause: "The association shall not be liable for disappearances, nor shall the association be liable for injuries occasioned wholly or partly, directly or indirectly, by any of the following acts or causes, or occurring while so engaged or affected: Disease, bodily or mental infirmity, hernia, orchitis, fits, vertigo, sleepwalking, * * * intentional injuries inflicted by the insured, sane or insane, voluntary over-exertion, wrestling, racing, violation of law, fighting, duelling, war or riot." The manner of the happening of the injury, so far as disclosed by the evidence, was as follows: The plaintiff had been waiting for some time in a corridor on the fourth floor of the New York Life Building in New York city, for the purpose of meeting an appointment. Becoming tired, he sat down to rest upon a balustrade surrounding the open court in the interior of the building. Shortly afterwards he became conscious of being upon the first floor, with both his legs broken, and surrounded by bystanders. He has no recollection of falling through the air, and has no knowledge of when or how he left his seat. No one testified to having

seen him fall, or to having seen the injury inflicted upon
him, or to any knowledge of the manner in which it
happened to him. He offers as an explanation the hypoth-
esis, which was adopted by the trial court, that he
accidentally lost his balance upon an insecure seat, and
fell through the open space between the fourth and first
stories of the building. The defendant objects that there
are several other hypotheses by which the known facts
may equally well be accounted for. First, it is contended
that there is no evidence that the plaintiff fell at all. This
is an inference from the situation in which he was found
after the injury, and from the fact that he had been
shortly previously sitting upon the balustrade, but it is
possible that he reached the first floor by some other
means than falling. But if it be conceded that he did
fall, it is an inference only that the fall caused the injury
complained of, which might even in that event have been
otherwise occasioned. And finally, if the fall and con-
sequent injury be both conceded, they do not conclusively
establish that the former was accidental, within the mean-
ing of the contract. It might have been occasioned by
bodily disease, such as heart failure or vertigo, or from
a sudden insane and suicidal impulse, from the conse-
quences of which the company was by its contract ex-
pressly exempted from liability. The defendant there-
upon insists that as the fact of the fall, if established at
all, is proved by circumstantial evidence only, an infer-
ence that it was accidental can not be drawn therefrom,
because of the rule that facts proved solely by circum-
stantial evidence can not themselves be treated as circum-
stances to prove ulterior facts. Hence it is contended that
there is no competent evidence tending to prove that the
infliction of the injury was accidental, within the mean-
ing of the contract. Concerning the existence and
validity of the rule mentioned there is no doubt. Green-
leaf, Evidence [15th ed.], secs. 1-13; *Manning v. John
Hancock Mutual Life Ins. Co.*, 100 U. S., 693; *United States
v. Ross*, 92 U. S., 281; *Globe Accident Ins. Co. v. Gerisch*,*

*54 Am. Rep., 486.

163 Ill., 625. The only question is as to its applicability to any particular case, and that some of the authorities carry it to as extreme a length as is contended for by the defendant can not be gainsaid. But it seems to us that so to do is to destroy the value of circumstantial evidence entirely. If after one has been found dead with a bullet hole in his heart, and it has been satisfactorily proved by circumstances that shortly before that time another had discharged a gun towards him, it can not be inferred that the wound was the consequence of the shot, then the proof of homicide by circumstantial evidence is impossible. And so if, after I have been proved by circumstances to have suffered a fall capable of inflicting certain bodily injuries, for which no other account is given, it can not be inferred that the injuries are the result of the fall, it is useless to prove the latter. And if the same circumstances from which a fall may be inferred, lead to the presumption that the fall was accidental, why may not the latter inference, as well as the former, be indulged? In the former case the fact is established for no other purpose than to give an account for injuries which are its natural and probable consequences. If a man's skull has been crushed, I am proved by circumstances to have struck him on the head with a bludgeon, for no other purpose than to justify the inference that my blow caused the injury. And so, human nature and the instinct of self-preservation being what they are, the circumstances which prove that a man not suspected of physical or mental infirmity has fallen from a dangerous height, raise a presumption that is well nigh irresistible that the fall was accidental. In other words, so large a majority of men are free from such mental or physical disabilities as would cause their precipitation from dangerous heights, that unless their presence is shown, the nearly universal and well-known traits and instincts of healthy persons are part of the attending circumstances by which the fall is proved, and the very circumstances that prove the fall, prove that it was acci-

dental. To hold otherwise would be to indulge a presumption against probability. We do not think that we are warranted by reason or authority in so doing. Thus in *Hampson v. Taylor*, 15 R. I., 83, 8 Atl. Rep., 331, which was an action for injuries suffered by a fall upon an icy sidewalk, evidence that the plaintiff was of intemperate habits was held not to overcome the presumption that he was sober at the time of the happening of the accident. In *Continental Ins. Co. v. Delpeuch*, 82 Pa. St., 225, it was held that the finding of a dead body without marks of violence raised no presumption of suicide, and, as the circumstances of the finding indicated death by drowning, the presumption was indulged that the drowning was accidental. In *Guardian Mutual Life Ins. Co. v. Hogan*, 80 Ill., 35, 41, "it clearly appeared," says the court, "that John Hogan [the insured] died from the effects of arsenic, either purposely or inadvertently taken by himself," and it was held that it was for the jury to say whether the death was suicidal or accidental. So in the case at bar it appears clearly, although from circumstantial evidence, that the plaintiff was injured by falling; and we think the circumstances warranted the court in going a step further than in the case just cited, and saying that no other presumption than accident was permissible under the evidence, or, in other words, that in the absence of other evidence it would not be permissible to presume disease or suicide as the cause of the fall.

The petition alleged that the fall was accidental, and it is insisted that the burden of proof was upon the plaintiff to establish that cause, and no other. The correctness of this contention is undisputed, but we think the plaintiff has met the requirement. All that was demanded of him was to establish a reasonable probability. He was not bound to conclusively negative every other hypothesis or conjecture which might be suggested without evidence in its support.

A jury was waived, and the cause tried to the court, who found generally for the plaintiff, and rendered judg-

ment accordingly. The defendant prosecutes error. It is recommended that the finding and judgment be affirmed.

Duffie and Albert, CC., concur.

By the Court: For reasons stated in the foregoing opinion, it is ordered that the finding and judgment of the district court be

AFFIRMED.

The following opinion on rehearing was filed on April 22, 1903:

Commissioner's opinion, Department No. 1.

1. **Suit on Accident Insurance Policy:** FACTS: EVIDENCE: PRESUMP-TION. Plaintiff testified that he leaned against the balustrade surrounding the stairway on the fourth floor of a building, and that his next succeeding consciousness was a sense of intense pain, and a realization that a physician was applying stimulants to his nostrils at the landing beneath the balustrade, where he was found with both legs fractured. He had no recollection of his flight through space. Evidence *held* sufficient to warrant the inference of an accidental fall from the balustrade. *Held, further,* that the inference of an accidental fall is one inference to be drawn from the facts proved, which must prevail in the absence of a showing that the fall was the result of design or insane impulse.

2. **Accident Insurance.** The beneficiary will not be held to a strict and literal compliance with the provisions of an accident insurance policy with reference to final proofs of the extent and duration of the injury, where a short delay in supplying such proofs has been occasioned by circumstances not attributable to his own laches or bad faith, and particularly where the insurer could easily have enabled the claimant to obviate its objections to the sufficiency of the proof.

3. **Evidence.** Evidence examined, and *held* sufficient to warrant the judgment and finding of the trial court.

4. **Stare Decisis.** Former decision herein (*Western Travelers Accident Ass'n v. Holbrook*, 65 Nebr., 469) adhered to.

KIRKPATRICK, C.

This action was brought by Edgar Hodgson Holbrook, defendant in error, against the Western Travelers' Acci-

dent Association, plaintiff in error, in the district court for Douglas county. The case is here upon rehearing, the prior opinion being found on page 469, *ante*. We have re-examined the evidence, and will restate the facts, in connection with the discussion of the questions presented, so far as may be necessary.

In the prior opinion, it is said : "When it has been sufficiently established by circumstantial evidence that a person has suffered injury by reason of falling from a dangerous height, it will be presumed, in the absence of evidence to the contrary, that the fall was accidental." The accident for which recovery is sought in this case, is alleged to have occurred January 8th, 1898. According to the testimony of defendant in error, at 10 o'clock in the forenoon of that day he had an appointment on the fourth floor of the building No. 346, Broadway, New York. While waiting, he leaned against the balustrade surrounding the stairway, and, as he says, "in some manner lost my balance and fell over the balustrade to the steps below, sustaining fractures of both legs." The balustrade was about three feet high. Defendant in error leaned against it with one leg resting against it and the other resting on the floor. He had never been afflicted with vertigo, fits or dizziness, or any similar affliction. He was not conscious of any dizziness preceding the fall. He did not recollect his flight through the air, or any sensation presumably produced thereby. His first sensation after the remembrance of leaning against the balustrade was when a physician called to attend him applied stimulants to his nostrils. This was at the landing where he alleged he had fallen. There is no further testimony as to the manner in which the injury was sustained. There is likewise no testimony tending to explain the injuries upon any other hypothesis than that given by defendant in error. As we understand contention of plaintiff in error, it is that defendant in error must prove that he suffered the injuries complained of by accidentally falling over the balustrade of the New York Life Building, and that the

evidence is insufficient to establish this allegation. This contention is based upon the following analysis of the proof: (1.) The fall from the balustrade to the steps beneath is proved by circumstantial evidence; hence, it is an inference. (2.) If plaintiff fell from the balustrade to the steps beneath, the fall was either accidental or it was not. There is no direct or positive proof that it was either. Therefore, to say that it was accidental is to base an inference of the accidental character of the fall in part upon the inference that there was a fall, thus contravening the rule that an inference or presumption can not be based upon an inference or presumption. Counsel say: "Should we grant that there are sufficient proved circumstances from which to infer that Holbrook fell over the balustrade, he is faced by the legal impossibility, as shown above, of using this inference as a basis upon which to rest the ultimate fact necessary to be proved,—that the fracture was caused by accidentally falling over the balustrade. He can arrive at this ultimate fact only by using this inference as one of the stepping stones." Under this state of the proof, counsel strenuously insist that defendant in error can not recover without contravening the rule referred to. This rule, we may freely concede, where applicable, is well grounded. The layman, in the ordinary course of human conduct, may safely, and even prudently, act upon a chain of inferences. But as suggested, courts are not guessers, and legal presumptions are required to be based upon proved facts. In our view, however, the reasoning of counsel in which it is sought to interpose this axiom as an insurmountable barrier to recovery is only apparent. The evidence set out, we think, proves a fall; and, although this fall is purely an inference from circumstances proved, it is nevertheless so certain that we do not believe that any court would hesitate to accept it as conclusive. Counsel suggest the absence of all proof as to the time intervening between 10 A. M., January 8, when defendant in error stood at the balustrade, and the time when he was found on the steps beneath, and also the ab-

sence of any person who saw him fall. The evidence, in brief, is that at the hour named, he stood at the balustrade —that being a fact cognizable to his own consciousness— and that the next succeeding impression upon his mind was a sense of intense pain, and the application of stimulants to his nostrils by a physician who was attempting to revive him, and a realization that he was on the stairs beneath. Assuming the truth of the facts actually testified to, the inference follows that he fell. This testimony convinces our minds; it convinced the mind of the trial court; and we believe that defendant in error himself believed that he fell, as he alleges. The experience of falling through a space of four stories, and living afterwards to tell of it, is so rare that we do not believe the probable workings of the human mind during the flight can be the subject of any safe or fairly accurate generalizations, and, consequently, are not prepared to say that defendant in error's testimony that he has no recollection of falling is inconsistent with the, assumed fact that he fell, and we are strongly inclined to think that to so hold would be, indeed, harsh, and well calculated to make recovery upon accident insurance policies in many instances wholly impossible, when in truth the facts shown are sufficient to convince any sane man that there was an accident.

Was the fall thus proved accidental? We do not understand counsel to deny that it was, but they do certainly deny that the accidental character of the fall is proved by competent evidence. The logic of counsel seems to be: Conceding that the circumstances show a fall, they show that, and nothing more. To say that it was accidental, is to base an inference in part upon the inference of a fall. We think the fallacy is apparent. It was accidental or it was not. It is impossible to exclude the one predication without adopting the other. Adopting counsel's logic, we might say that we can not arrive at the ultimate fact that it was not accidental without using the inference of a fall as one of the stepping stones. Yet this inference

is highly artificial, while the inference that it was accidental is natural, and in harmony with accepted premises. There are perhaps two hypotheses that the fall was not accidental: (a) He intended to end his life by dashing himself to the floor beneath; (b) some one with malicious intent secretly pushed him over the balustrade. The impulse of self-preservation, the desire to prolong life, is so rarely absent in any individual, the vast majority of mankind possessing it in all of its vigor, that, in the absence of proof to the contrary, defendant in error is entitled to the presumption that he did not fall intentionally. The defendant charged with a crime is mantled about with a presumption of innocence. But this same presumption attaches alike to all men everywhere, and in the absence of some proof, we fail to see how it could be presumed that some one maliciously pushed defendant in error over the balustrade. There is, perhaps, another hypothesis under the terms of this contract, namely, that he was seized with an uncontrollable suicidal impulse. But we do not see that his position is thereby altered. Insanity would be matter of defense to be affirmatively pleaded and proved. There would be no burden on defendant in error to prove his sanity until a case were made that he was insane. It is not evidence of insanity that one leans against a balustrade three feet high, albeit to do so is imprudent. There is no alternative but to admit that it is impossible to say that there was an accidental fall without saying that there was a fall. We can not deny that there was a fall, and hence, in the absence of any evidence tending to show that it was the result of design or insane impulse, the legal presumption is that it was accidental. As a basis of all legal reasoning, the normal is presumed; the abnormal must be proved. The circumstances proved in this case fully warrant the conclusion of fact that defendant in error accidentally fell over the balustrade. An accident is an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event; "often an undesigned and unforeseen occurrence of an

afflictive or unfortunate character" (Webster's Dictionary) ; and it is to be assumed, therefore, that one who suffers an accident will, in many cases, be without the power to narrate all the circumstances leading up to or resulting in the accident. Accordingly, the inability of defendant in error to testify to all the circumstances of his accident is due in part to the fact that it was an accident; that it was unforseen, unexpected, undesigned and certainly sudden. If it had not been unforeseen and undesigned, he might have arranged for witnesses; but we decline to hold that being unable to call any witness to the fact of his fall, whose testimony might affirmatively show that it was accidental, he is not entitled to the presumption of innocence, the presumption of sanity, and the presumption that no one violently hurled him over the heights, the circumstances actually shown being sufficient, and we hold that they show that he accidentally fell, sustaining the injuries.

A further question for consideration at this hearing is whether defendant in error furnished proper and timely proofs of injury, and its duration and extent, as required by the contract. This question involves an examination of the evidence as to what defendant in error did in compliance with a letter of the plaintiff in error addressed to him January 26th, 1898, a few weeks after the accident, stating that certain blanks for final proof were enclosed, "which you will please return, properly executed, as soon as you have recovered." The blanks referred to were a final statement of claimant's physician and claimant's own final statement. On January 16, 1899—a year and eight days after the injury—claimant's disability continuing throughout that period, he sent to the company the following letter: "I enclose herewith physician's final report in my case, my own report, and physician's first statement having been forwarded to you shortly after the accident." On January 20, 1899, the company replied, acknowledging the receipt of physician's final statement or report, but stating that claimant's own final report had not been

received.  From defendant in error's letter of the 16th, it would seem that he understood that no final report, namely, a report subsequent to the termination of the period of indemnity or the period of disability, was required.  However, on January 23, 1899, defendant in error promptly replied to the company's letter of the 20th, stating that he had filled out all the blanks received from the company, but that if further proof of any description were required, the company should send the necessary blanks to him at once, and he would return them properly executed.  Some three months after the accident, defendant in error, who had made a request upon the company for certain advances under the contract, assuming that the contract entitled him to payments from time to time, employed an attorney in Chicago to look after his claim against the insurance company, evidently growing suspicious because of the attitude assumed by the company as indicated by its reply to his request for advance payments. This fact explains the letter of the company dated January 28, 1899, referring to defendant in error's letter of the 23d of that month, in which defendant in error expressed his readiness to fill out any blanks which might be required, in which the company stated, "As per your instructions of last year, we have addressed communications with reference to your claim to your attorney, Mr. Edward O'Bryan, of Chicago."  This, then, was the answer to Holbrook's request for the necessary blanks which had not yet been executed.  On January 28, the same day on which the company sent this letter to Holbrook, it sent a letter to O'Bryan, stating that claimant's final report had not been received, but did not enclose any blank.  On February 10, 1899, the attorney replied that if the blank or blanks were sent to him, he would see that claimant filled them out at once.  On February 17 the company sent the blank referred to, but distinctly stated that no conditions of the policy were thereby waived.  This blank was thereupon executed with reasonable diligence.  When it is remembered that defendant in error was at German-

38

town, Pennsylvania, the attorney at Chicago, and the office of the company at Omaha, and that the thirty days from the expiration of the period of indemnity would expire on February 8, 1899, the evasive communication of the company to Holbrook on the 28th of January, and its failure to enclose in its letter of that date to the attorney the blank referred to, are significant facts. If the company had sent the blank directly to Holbrook on the 28th, there would have been ample time to get it to the office of the company before February 8. Holbrook filled out all the blanks that he received. He clearly indicated his readiness to do anything further required. Nothing by him done shows any effort to mislead or evade. The same certainly can not be said regarding the conduct of the officers of the company. Holbrook could not fill out a blank which he did not receive. It is true that he testifies to the receipt by him of the blank known as claimant's final statement; but if, as he testifies, this was filled out shortly after the accident and sent in at once, then he did not have such blank at the time it was needed, and he made known its absence in time for the company to supply it. The failure of the company to supply it, either to him or his attorney, after notice that he did not have it, we must hold sufficient to excuse him for not making the proof sooner. We think the true rule applicable here is that literal compliance with provisions like that under consideration will not be required when to do so would involve an impossibility. It is the doctrine of this court that a more liberal construction will be given to such provisions than to conditions to be complied with prior to the injury for the purpose of keeping the policy in force. The beneficiary in this case acted with diligence, and with no laches on his part. It was easily within the power of plaintiff in error to have enabled Holbrook to obviate its objections to the sufficiency of his final proof. *Woodmen Accident Ass'n v. Pratt*, 62 Nebr., 673. Under the facts and circumstances thus clearly shown, we are of opinion that there was no forfeiture under the contract, and that the contract was sufficiently complied with.

It is recommended that the former decision in this case be adhered to, and the judgment of the district court be affirmed.

HASTINGS and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former decision in this case is adhered to, and the judgment of the district court is

AFFIRMED.