ISABELLE SWEENEY, APPELLEE, V. MIDWEST LIFE INSURANCE COMPANY, APPELLANT.

FILED JULY 19, 1935. No. 29306.

J. W. Kinsinger, H. C. Henderson and H. J. Lutz, for appellant.

Rosewater, Mecham, Shackelford & Stoehr and Reginald C. Miller, contra.

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

This action was commenced in the district court for Douglas county to recover the death benefit provided in an accident insurance policy, upon the ground that the insured had come to her death by accidental means, within the terms of the policy.

The petition alleged that on October 19, 1931, the deceased slipped and fell over a stool which also slipped as she was engaged in her work, falling and striking her head, left arm and hip and other parts of her body in the fall, and that prior thereto she was physically fit and able to work and was working steadily, that said fall resulted in almost immediate paralysis and in her death on December 2, 1931. The defendant, appellant, defended upon the ground that the deceased had at the time of her application for insurance and for many years prior thereto, as she well knew, a chronic and organic heart disease of a serious and advanced nature, that said heart disease caused and resulted in her death. The answer further alleged that in her application for the insurance the insured had made false answers in reference to the state of her health in the matters pertaining to said heart disease. The issuance and delivery of the policy, the death of the insured, proof of plaintiff's claim and refusal of the defendant to pay it were admitted. The reply denied the making of any false answers in the application, alleged that the deceased had fairly disclosed all information she had concerning the matters inquired about, and denied that she had a chronic heart disease or that it was the cause of her death. These issues were submitted to the jury upon the evidence, and a verdict was returned for the plaintiff, upon which judgment was rendered for the amount of the policy claim.

The case is submitted in this court upon three principal assignments on the part of the appellant, to the effect that (1) the evidence was not sufficient to support a verdict or judgment in the plaintiff's favor, (2) that the evidence showed fraud on the part of the insured in procuring the policy, and (3) that there was error in the court's instructions by which the case was submitted to the jury. There is an additional assignment concerning the admission of testimony on the cross-examination of one of the witnesses for the defendant.

It is apparent that this was the ordinary action to re-

cover upon an accident insurance policy and that no new or novel features are involved in it. The record of the trial, as embodied in the bill of exceptions, consists of 201 typewritten pages. The condensation and analysis of it, as embodied in the briefs of counsel, consists of 284 printed pages.

The admission of testimony to which objection is made arose in this manner: Dr. Hanisch was called as a witness for the defendant and had testified to his examination of the deceased made November 13 following the accident, in the course of which testimony he made frequent reference to the personal history of the insured as given by her in that examination. He was asked on cross-examination whether as a part of that history she told him that on October 19, while seated in a chair behind the cigar counter, the chair slipped out from under her and she fell striking her head, left shoulder and left hip. This was objected to as not being proper cross-examination. The objection was overruled and the witness permitted to answer, which he did, stating that she did give him such a history. Upon a further question as to what she had then said as to the acts of certain other persons present at the time, the objection was sustained and testimony not admitted as to her statements concerning the acts or statements of other persons.

The witness, while testifying, held in his hand and made constant reference to a memorandum which he had made concerning his examination and her history given to him as a part thereof. The witness stated: "I will be very glad to give you the results of my examination I have before me. * * * Yes, sir, that is my memoranda. It is from my notes. * * * Q. What findings did you make there as to her physical condition at that time? * * * A. Let me just refer to my notes and I will give you that information. * * * My diagnosis was cerebral embolism. * * * My report of her heart here indicates that she had a very badly diseased heart. * * * Q. What did she say about that? A. This is as to her past history." The witness then details cer-

tain statements by the insured at the time in reference to matters pertaining to her health, going back to her childhood, and was further asked: "Q. She told you then that she had been told that she had a rheumatic heart? * * * A. Yes, sir." Upon cross-examination the witness was asked concerning her blood pressure, to which he replied that he could not tell about the blood pressure without looking at his memorandum, that it was three years ago. The memorandum was then referred to by counsel cross-examining the witness and, after certain inquiries, was shown to the counsel, and thereupon the question was asked to which objection was made and the ruling complained of followed.

In view of this situation as disclosed by the testimony itself and without further discussion, we express the opinion that the trial court did not abuse its discretion or commit prejudicial error in permitting the question to be answered. Any undue expansion upon further questions concerning other things not directly connected with the subject of inquiry was not permitted by the court, and the witness having made his memorandum and the history and certain parts of it as stated by the deceased rather prominent in his testimony on direct examination, the cross-examiner was entitled to make this inquiry.

Upon the assignment of error as to the matter of instructions, the criticism is directed particularly to the instruction No. 8 which is as follows:

"The defendant pleads as a defense to the plaintiff's right to recover in this action against the defendant that the insured did not come to her death as a result of an accident, independent of all other causes; that her death resulted from a stroke of paralysis caused by a diseased condition of the heart.

"In this connection you are instructed that if the defendant has satisfied you by a preponderance of the evidence that the death of the insured was due to a stroke of paralysis or other cause due to a diseased condition of the heart, then, in such case, the plaintiff would not be entitled to

recover, and your verdict should be for the defendant."

This instruction, of course, must be considered in its connection with all the other instructions given at the trial. It is neither necessary nor possible that the propositions involved should all be stated in one instruction. Particular criticism is applied to the clause that the defendant "pleads as a defense" the things stated. In this we feel there is too much of a tendency to a critical distinction of words. It is often the case that lawyers and courts in discussing the terms of an instruction become too deeply analytical as to refined distinctions involved in the language used. Often these distinctions are apparent to lawyers and judges accustomed to the analysis of such documents, and when their application is confined to the boundaries of legal discussion it is perhaps all right; but in use and application of terms in the trial of a case we fear that often the decision goes off on a matter which would have been entirely incomprehensible to the average juror. It is quite possible that the trial judge might have found a more appropriate word than "pleads," and yet in determining the effect of the instruction in its possible influence upon the jury we are not prepared to say he could have done so. We all know that to the average juror and layman the word "pleads" is practically synonomous with "claims," "urges" or "contends." It does not to the juror have its legal significance as to the lawyer, of its particular application to the pleadings proper in the case, but to the average juror and layman what a litigant pleads in a case is that which he asserts or contends in his own behalf.

It is further urged that the court erred in referring to the death as resulting from a stroke of paralysis, and appellant urges in its brief that it was not defendant's contention that paralysis caused death; that defendant's contention was that the cause of death was not established, but that it was not due to paralysis, and that the defendant introduced no evidence as to the cause of the insured's death. The appellant seeks thereon to make a distinction

between its contention as to the cause of the fall and the cause of the death. As we gather the contentions of the parties, there was no dispute that death followed upon the paralysis—there was the fall, there was the paralysis, there was the death. The real point of controversy between the litigants was whether the fall caused the paralysis and resulting death or whether the paralysis came first and caused the fall and resulting death. That was the proposition to which the evidence was directed, and the defendant did plead in its answer, after reciting questions concerning the insured's previous condition of health to which alleged false answers had been made, that "said heart disease caused and resulted in the death of the said Irene Sweeney on or about December 2, 1931," and that was the issue tendered by defendant's answer.

The defendant's medical witness, Dr. Young, testified: "In my opinion the cerebral infarct due to embolism was the cause of her paralysis." The doctor further testified that he had the opinion that the cerebral embolism occurred prior to the fall and that it was the cause of her fall.

The defendant's counsel, as one of the grounds of his motion for a directed verdict, states that the undisputed evidence shows that the insured had an attack of cerebral embolism which was caused in part by preexisting disease —in part or altogether by such cause. In view of the immediate connection in point of fact and in time between the fall and the paralysis and the death, and that upon the theory of both sides in the trial the single controversial question was whether the fall caused the paralysis or the paralysis caused the fall, and that in either case death resulted, we cannot find any tangible ground for a distinction as to whether reference shall be made to the cause of the fall or cause of the death.

The court informed the jury in instruction No. 4 that, before the plaintiff could recover, she must establish by preponderance of the evidence that the death of the insured, Irene Sweeney, was caused through accidental

means independently of all other causes, and that upon establishment of that fact by a preponderance of the evidence then the verdict should be for the plaintiff, unless the defendant satisfied them by a preponderance of the evidence that the defendant was induced to accept the application of the insured and issue the policy by false answers to interrogatories contained in the application, which the defendant believed and relied upon, and which the insured knew were untrue.

The court further in instruction No. 9 informed the jury that, if the defendant had satisfied them by a preponderance of the evidence that the insured, in answer to the question in her application whether she had ever had chronic or recurrent heart disease, knowingly answered it untruthfully, also stating to the jury the proposition as to other answers, and that said company relied on said answers and would not have issued the policy had it known that said answers or any of them were not true, then under such circumstances the plaintiff would not be entitled to recover and the verdict should be for the defendant.

Upon the whole record we are not able to find any prejudicial error in the instructions, nor in the instruction No. 8 of which particular complaint is made.

Upon the questions whether fraud by false answers in the application was established by the evidence, or whether the evidence was sufficient to prove the accidental fall and consequent death independently of all other causes, we are of the opinion that those questions were properly left to the jury and that their determination upon the conflicting evidence should be final. While the question was a debatable one, we have no doubt that there was sufficient evidence on both sides to go to the jury. The testimony as to the physical condition of the insured was derived from examination after the fall and from an autopsy and has in part already been adverted to. Upon the part of the plaintiff the evidence showed that the insured had sustained this fall from a rickety stool which she occupied, on the top of which was a box on which she sat, and from

which she fell on to a tile floor sustaining bruises to her head, shoulder and hip. The testimony of plaintiff's medical witness was to the effect that these things might cause what followed, but that he could not absolutely fix the cause himself, which could only be done by God Almighty. The testimony of lay witnesses was to the effect that the insured had been active and engaged in labor, much of it hard physical labor, for many years, and that up to and immediately preceding this occurrence she had been lively, active and without any apparent indisposition of any kind. She had done house work, farm work, and was at the time engaged as sales girl at the cigar counter in the Henshaw Hotel. She had been told in early girlhood that there was something the matter with her heart, but that she insisted it never bothered her any, and she went on thereafter doing many kinds of work requiring physical exertion. She was not shown to have been afflicted with vertigo, fits, dizziness, fainting or any similar affliction, or to have ever had a fall until the one which shortly preceded her death.

The case of *Railway Officials & Employees Accident Ass'n v. Drummond*, 56 Neb. 235, presents some features quite analogous to those of the present case. In that case the contract feature over which the controversy arose was whether the death of the insured, who had been shot by a robber, resulted from the intentional act of the insured or from the intentional act of another person. The jury evidently found, and the trial court and this court approved the finding, that the pistol of the robber had been accidentally discharged, thereby resulting in the death of the insured. The court in the opinion by the late Justice Sullivan say: "The inference that the pistol in the hands of the robber was accidentally discharged and that the killing of Drummond was unintentional, is a reasonable deduction from all the circumstances proved on the trial."

In a later case of *Western Travelers Accident Ass'n v. Holbrook*, 65 Neb. 469, and on rehearing 475, it is held that, when it has been sufficiently established by circumstantial evidence that a person has suffered injury by rea-

son of falling from a dangerous height, it will be presumed, in the absence of evidence to the contrary, that the fall was accidental. The proposition is approved and restated in *Thomas Kilpatrick & Co. v. London Guarantee & Accident Co.,* 121 Neb. 354. It is said in the opinion in the *Holbrook* case: "The petition alleged that the fall was accidental, and it is insisted that the burden of proof was upon the plaintiff to establish that cause, and no other. The correctness of this contention is undisputed, but we think the plaintiff has met the requirement. All that was demanded of him was to establish a reasonable probability." We do not perceive that the difference in the distance of the fall, whether it is from a railing surrounding an areaway to a floor below, or whether it is from a stool to a tile floor, is ground for any distinction as to whether the fall was accidental. It is within the knowledge of every one that in either case the fall on to a tile floor might be productive of serious injury.

Therefore, finding no prejudicial error in the record, the judgment of the trial court is

AFFIRMED.