ALICE J. RAPP, APPELLEE, V. METROPOLITAN ACCIDENT AND HEALTH INSURANCE COMPANY, APPELLANT.

8 N. W. (2d) 692

FILED APRIL 2, 1943. No. 31535.

*Frost, Hammes & Nimtz,* for appellant.

*Jay P. Gibbs* and *Rosewater, Mecham, Shackelford & Stoehr, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This is an action to recover the principal sum for death from sickness or from accident on an insurance policy, issued to plaintiff's husband November 9, 1940. On April 30, 1941, he died during the progress of an exploratory operation from surgical shock, incident to said operation and from the effects of carcinoma of the common bile duct, which defendant's answer denied was an accident within the meaning of the policy, denying the insured died from any bodily injury or injuries effected solely and independently of all other causes through accidental means. At the conclusion of plaintiff's evidence the defendant offered no evidence and moved for a directed verdict which was joined in by the plaintiff. The court entered the following judgment:

"That the insured, Frank W. Rapp, died * * * (as heretofore stated) ; that the immediate and proximate cause of his death was surgical shock, induced by said operation, which condition was a wholly unanticipated, unexpected, and unforeseen contingency, and the death of * * * from said cause, therefore, constituted 'loss of life * * * resulting from bodily injuries * * * sustained * * * directly, independently and exclusively of all other causes * * * through accidental means,' within the terms and meaning of said policy. * * *

146

"That the plaintiff has been paid the weekly benefits for confining and non-confining illness in said policy provided, but is entitled to recover the 'Principal Sum' " of $1,054.50, costs and attorney's fee. From this judgment the defendant appeals.

The record discloses: The insured, Frank W. Rapp, a practicing dentist, 52 years of age, was and had been in sound health. On or about March 21, 1941, he became afflicted with yellow jaundice, caused by an obstruction of the bile duct. He consulted a physician on March 24. On April 10 he entered a hospital for observation. During the period of time from and after that date, he was in sound health, visited with friends, walked about, and helped to move into another room. However, he suffered from severe itching. Drugs were administered to relieve his condition brought about by his affliction. He, in addition, received "Glucose 5%" to run food into his veins as nourishment and to neutralize some of the bile, which was sent back, due to poor functioning of the liver, and to relieve the itching and treat the liver. On several occasions attempts were made to mechanically drain the gall bladder. These attempts were unsuccessful, which indicated a complete obstruction of the duct. No bile was getting into the intestines at all. At this time a medication, called "synkamin," was administered by hypodermic, used in cases of this kind to prevent hemorrhage. He was given more medicine each day, because his condition was becoming serious, his itching more intense and more difficult to relieve. With a complete obstruction, the patient would eventually die.

It was concluded, with the insured's consent, that on April 30 he would undergo an exploratory operation to determine his difficulty. The morning of the operation his pulse rate was normal, respiration normal, and, in the doctor's opinion, he would have withstood an operation. On or about 11:15 in the morning the operation proceeded, and, as the attending physician testified, its purpose was "to determine the exact situation, of any definite situation, a diagnosis which cannot be made through any other means,"

in a case of a jaundiced condition, an operation to "definitely examine the liver ducts, the gall bladder and the liver itself to see just where the point of obstruction is." The duration of such an operation is from one hour to an hour and a half. The customary gall bladder incision was made, which is an eight-inch incision; the abdomen was opened, the gall bladder raised, and the ducts examined. The operation had been in progress for about 37 minutes when it was noticed that there was something unusual. An anesthetist called the attention of the operating surgeon to the fact that the patient's pulse had been very rapid and thready, his respiration more shallow and more rapid. This indicated that the patient was going into a surgical shock, "a condition in which the body reacts to injury or trauma by causing a loss of fluids from the normal blood-flowing channels, which would be the heart and the arteries, causing the fluids to go into these tissue spaces surrounding it, and causing a constriction of the blood vessels, so there is not the proper blood collected or being supplied to the vital tissues of the body. If this condition is not corrected readily, the shock or the condition becomes worse." Every effort was made, with all the proper equipment and immediately, to restore the insured, but without avail. The attendants were unable to administer any fluid due to the failure of the heart action. The patient died on the operating table at 12:05 p. m.

The insured was treated because his liver was not functioning; the bile was not getting through. There was complete destruction. In this condition he would not have lived out his normal expectancy and would have died without the operation the same day, or with the possible chance of living two or three days. The operation was an attempt, and the only chance of saving his life or prolonging it. This kind of operation is a major one, and surgical shock is common to it. The physician did not expect the patient to die on the operating table. Previously to this one, he had never performed an operation where the bile had backed up and damaged the cells of the liver and where the condi-

tion was as bad as in this case. The evidence is persuasive that the insured's condition was cancer of the common bile duct. If the shock had not intervened, the operation would have proceeded, and the gall bladder would have been used to make the by-pass; the duct would have been taken out, the bladder opened up through which the bile could flow from the liver into the intestines. If this had been done; that is, the obstruction been removed, and if the liver had been regenerated and come back at all the patient might have lived for months. The skill with which the operation was performed and the medical attention given are not questioned.

The defendant contends that the court erred in its finding and judgment, as heretofore stated.

"In suit on an accident insurance policy, the burden of proof is upon the plaintiff to show that death was accidental." *Dodder v. Aetna Life Ins. Co.*, 104 Neb. 70, 175 N. W. 651; followed in *Lebs v. Mutual Benefit Health & Accident Ass'n*, 124 Neb. 491, 247 N. W. 19.

The undisputed facts show that the insured consented to an exploratory major surgical operation, during which nothing unusual, unexpected or extraordinary happened in the operation itself, except that the insured died on the operating table from surgical shock, incident to such operation.

In the case of *Pope v. Prudential Ins. Co.*, 29 Fed. (2d) 185, the court held: "When insured, or those acting for him with his consent, did precisely what they intended to do and in the way which they intended, knowing that injury often resulted and might be unavoidable, and there was no slip or misstep in performance, nor any ignorance of a material factor, injury resulting therefrom did not result through 'accidental cause,' within meaning of insurance policy insuring against death resulting from bodily injuries effected solely through 'external, violent, or accidental causes,' even though death so resulting might properly be called 'accidental death.' "

In the foregoing case, the plaintiff in error was the ben-

eficiary in the policy upon her husband's life, which provided, in the event of his death, she would receive $20,000, and double that amount if the death were the result, directly and independently, of bodily injuries, effected solely through external violence and accidental causes, but not if death resulted, directly or indirectly, from disease in any form. The defense was that surgical shock, and death resulting therefrom, was not an accident, within the concept of the policy issued by the company. The judgment of the trial court was for the defendant and affirmed in the appellate court. In the opinion it was said:

"Upon the whole, we are satisfied that if the words 'accidental means' are taken 'in the sense conveyed to the ordinary reader' * * * or in the usage of the average man and not of the scientist (Judge Cardozo in * * * ) they may not, merely because a reasonably anticipated condition was found to exist to such a degree that the inevitable risk was sharply increased, rightly be interpreted as covering the performance of a surgical operation with due skill and in the expected manner; and beyond this, the proof of 'accidental means' does not go."

And, as stated in *Caldwell v. Travelers Ins. Co.*, 305 Mo. 619, 267 S. W. 907, the insured was operated upon for a double hernia and died from an obstruction of the bowel, and thrombosis. The burden was on the plaintiff to show an accidental cause of insured's death. The operation was voluntarily undertaken and admittedly performed in a skilful manner. The burden was on the plaintiff to show that something unforeseen, unusual, unexpected, or unintentional occurred during the progress of the operation, and that this something caused the insured's death. She offered only proof tending to show that an unforeseen, unusual and unexpected result followed the performance of an apparently necessary surgical operation, performed on insured and which was skilfully performed. She was denied recovery. Cases holding in like manner are cited by the defendant, but the only case involving surgical shock cited by either party is *Pope v. Prudential Ins. Co., supra.* The anal-

ysis to be drawn from the cases cited by the defendant may be summarized as follows:

If one dies unexpectedly during a major surgical operation, where there is no mishap, slip or any unexpected, unusual or unforeseen occurrence, his death is not the result of accidental means. In the instant case there was no accident during the insured's exploratory major surgical operation. True, no one expected insured to die on the operating table, but an accidental death does not depend upon what one expects will or will not happen. Every one knows that there is much uncertainty about what will or will not happen during a major surgical operation, if the patient is in a poor physical condition and if the purpose of the operation is to explore in order to prolong the life of the insured, who in this case would have died, as testified to by his attending physician, on the afternoon of the day of the operation, if surgical steps had not been taken in an effort to prolong his life.

Plaintiff's contention, which was sustained by the trial court, is: Where an unusual, unexpected and unforeseen injury or death results from an intentional act of the insured, the ensuing injury or death is caused by accidental means, even though no mischance, mishap or slip occurs in the doing of the act; citing *Murphy v. Travelers Ins. Co.*, 141 Neb. 41, 2 N. W. (2d) 576, and other cases to the same effect.

In the instant case, Doctor Rapp consented to the operation. In the *Murphy* case the external force was a cumulative overdose of X-ray exposure which was unexpected and unanticipated, and the result was the breaking down of the tissues of the body. Here the external force was a surgeon's scalpel during an operation which was expected and anticipated and deliberately planned, and the result was surgical shock, incident to the operation, meaning liable or apt to happen, and because the insured was not able to respond to the ordinary heart stimulants, and because they were unable even to administer the fluid, due to the failure of the heart action, Doctor Rapp died.

The cases cited by the plaintiff are not cases involving surgical shock or a major surgical operation. There are cases cited which show that the insured died under the anesthetic from cardiac failure, superinduced by the administration of the anesthesia, or where the insured had sustained a bad fall which started to change the events that caused his death, the fall constituting the accident. If Doctor Rapp had died as the result of shock from a fall, or fallen off the operating table, and the fall during the operation was the proximate cause of death, the plaintiff could recover for death from accident under cases cited by her, such as *Modern Woodman Accident Ass'n v. Shryock*, 54 Neb. 250, 74 N. W. 607; *Moon v. Order of United Commercial Travelers*, 96 Neb. 65, 146 N. W. 1037; *Sweeney v. Midwest Life Ins. Co.*, 129 Neb. 521, 262 N. W. 47.

In determining the issue as to whether the death was caused by an accident or through accidental means, within the contemplation of a policy, it is necessary to analyze the facts and circumstances of each case presented, and a careful analysis of the facts in the instant case discloses a distinction between our holding in *Murphy v. Travelers Ins. Co., supra,* and cases of like nature, cited by the plaintiff, and *Pope v. Prudential Ins. Co., supra,* involving the question of surgical shock, cited by defendant. The distinction we have heretofore pointed out. The plaintiff, in carrying the burden of proof, failed to show that the insured's death was accidental. The undisputed facts are that the insured submitted to an exploratory major surgical operation during which nothing unusual, unexpected or extraordinary happened in the operation itself, except that it caused insured's blood pressure to fall, which is incident to said operation, and insured died on the operating table. Surgical shock is common and is expected to follow in all surgical operations, and because the insured was not able to respond to the stimulants, blood transfusions could not be given, and as a result thereof insured died during the operation, it does not follow that such caused accidental death of insured.

From the doctor's contact with the patient, the treatment administered, the patient's reactions, the doctor's observations, the history found by the doctor in the operation and on the autopsy which the doctor attended, it was his opinion that the poor physical condition of the patient, existing in the period of time through which he attended him, caused the surgical shock suffered by the patient. This was due to severe damage to the cells of the liver and its inability to detoxicate or break down the poisonous substances which are put into it, thus lessening the resistance of all the tissues, so the patient could not react as readily as he could have done at some previous period; that is, it was the patient's general condition and the condition of his tissues which caused his failure to respond to the stimulant. The patient did not have sufficient strength or stamina to withstand the operation. It caused the shock; it was not an accident.

The plaintiff further contends that the policy insures against loss of life due to disease, and that she is entitled to recover for the reason that the insured died of a disease. The trial court did not so find.

From an examination of the policy, we find that it is not different from a number of other accident and health policies which provide indemnity only for death from accident. An analysis of the wording of the heading and the insuring clause in the policy discloses that recovery may not be had for death from disease. We deem it unnecessary to set out in full such provisions, but conclude that there is no cause of action accruing to the beneficiary, under the terms of the policy, for death by disease.

The judgment of the district court is reversed, and the cause remanded with directions to sustain the motion for a directed verdict and enter judgment for the defendant.

REVERSED.