ALLEN H. KEATING AND JANICE MILLER, APPELLANTS, V.
J.C. PENNEY LIFE INSURANCE COMPANY,
A STOCK COMPANY, APPELLEE.

660 N.W.2d 887

Filed April 29, 2003.   No. A-01-1045.

Dixon G. Adams, of Adams & Sullivan, for appellants.

John M. French and Jennifer K. Sewell, of Peters Law Firm, P.C., for appellee.

IRWIN, Chief Judge, and CARLSON and MOORE, Judges.

CARLSON, Judge.

## INTRODUCTION

Allen H. Keating and Janice Miller, children of Charlotte Keating (Keating) and the beneficiaries of Keating's life insurance policy with J.C. Penney Life Insurance Company (J.C. Penney), appeal from an order of the district court for Douglas County dismissing the beneficiaries' petition for $50,000 of life insurance proceeds. The trial court held that Keating's death was not a direct result of a collision or crash of her automobile, but resulted directly and independently from her disorientation. For the reasons set forth below, we affirm.

## BACKGROUND

On April 7, 1999, Keating entered into an insurance contract with J.C. Penney in which J.C. Penney agreed to insure Keating's life against death by accidental means in exchange for her payment of monthly premiums.

Part II of Keating's policy with J.C. Penney, entitled "Benefit for Travel by Private Passenger Automobile and Land Motor Vehicle," states:

> If a Covered Person is injured:
>
> 1. by being struck by a Private Passenger Automobile; or
> 2. *as a direct result of a collision or crash of a Private Passenger Automobile*; or
> 3. by being struck by a Land Motor Vehicle; or
> 4. while driving for hire a Land Motor Vehicle;
>
> we will pay the applicable benefit specified in Part II of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits below.

(Emphasis supplied.)

The schedule of losses and benefits states that if an insured is involved in an automobile accident, the insured or his or her beneficiary would be entitled to $100,000 unless the insured person was age 70 or older. In that case, the benefits would be reduced by 50 percent, or $50,000. The schedule also states that for "[a]ll

other covered accidents at home, at work, at any public or private place, anywhere," an insured would receive $25,000, with benefits reduced by half when the insured reaches age 70.

The record shows that Keating died on April 8, 1999, and that subsequently, J.C. Penney paid the beneficiaries $12,500.

On October 26, 1999, the beneficiaries filed a petition alleging that on April 8, Keating sustained bodily injuries by accidental means, which independently and exclusively of disease and all other causes, resulted in Keating's death on the same date. Specifically, the beneficiaries alleged that Keating's injuries were a direct and proximate result of a collision or crash of a private passenger automobile. Furthermore, the beneficiaries alleged that although J.C. Penney had paid them $12,500, it had neglected to pay them the remaining sum of $37,500. The beneficiaries requested that J.C. Penney pay them the additional sum of $37,500, together with interest from April 8.

In an answer filed December 1, 1999, J.C. Penney stated that the insurance policy J.C. Penney issued to Keating was based upon Keating's representation that her date of birth was May 8, 1931. J.C. Penney stated that if it had known Keating's true birth date was May 7, 1912, it would not have issued coverage to Keating. J.C. Penney stated that the beneficiaries were not entitled to the benefits that they had already received or any future benefits.

In a reply filed December 3, 1999, the beneficiaries stated that J.C. Penney could not allege Keating's mistaken age as an affirmative defense because J.C. Penney had failed to attach a copy of Keating's application for insurance as required under Nebraska law.

Subsequently, both parties moved for summary judgment, and the trial court denied both motions. The parties then submitted their case to the court for a decision on the merits through a stipulation and agreed statement of facts, together with the exhibits offered by the parties at the summary judgment hearing.

The agreed statement of facts reads as follows:

On Thursday, April 8, 1999 . . . Keating, who was 87 years of age, resided at 4404 Marcy Street, in Omaha, Nebraska. . . . Keating was the owner of a 1995 Oldsmobile Ciera automobile which on said date had an odometer

reading of approximately 5,000 miles. During the afternoon of April 8, 1999[,] Keating left her home to pick up her dog at a veterinarian's office in [w]est Omaha, driving her Oldsmobile automobile. . . . Keating did not arrive at the veterinarian's office and was reported as a missing person. On April 9, 1999[,] at about 7:30 o'clock A.M. her body was found in a farm pasture located 7 miles east and 2.5 miles north of Milligan, which is in Saline County, Nebraska. Two farmers reported the discovery of the body to the Saline County Sheriff's office. Deputy Sheriff Michael J. Kovark proceeded to the scene and upon examining the body determined that . . . Keating was deceased. Photographs in evidence show that the body was lying face down in the farm pasture and that . . . Keating was wearing no coat or shoes. A copy of the incident report completed by Deputy Kovark is in evidence. This report recites that at said time the temperature was cool and a coat was needed. Sheriff Byron Buzek[,] in his deposition, testified with respect to the weather conditions at the time as being cool and sufficiently low to result in exposure. He estimated the time of death to be about midnight.

When Sheriff Buzek arrived at the scene he instructed Deputy Kovark to search for a vehicle. . . . Keating's vehicle was located on a dirt road approximately one-half mile to the southeast. The vehicle was stuck in the mud in the county road ditch on the east side of the road. It was facing north. Deputy Kovark, in his report, states that he noticed that the vehicle had struck some types of objects and upon a closer look he could tell that the vehicle had several scratches in the paint as if it had hit trees along the edge of the roadway. The driver's side mirror was completely damaged and hanging from the door and the driver's side windshield wiper was lying on the ground. The driver's side rear quarter panel had a dent in it along with several scratches. The photographs taken at the scene show this damage to the car and also show that tracks behind and leading to the vehicle indicate that the road was muddy and the vehicle had been driven from one side of the road to the other. There was a branch from a pine tree in the road behind the

vehicle and some wood was stuck in the left rear quarter panel. A branch was hung up under the frame of the car. Deputy Kovark was unable to determine the area of contact with the tree where the accident occurred.

Deputy Kovark's report states that he determined that the vehicle was registered to . . . Keating or Allen Keating of Omaha, Nebraska. He looked inside the vehicle and observed a pair of shoes on the front floorboard and a brown purse and a coat on the front seat. Photographs were taken of the inside of the vehicle.

The Deputy's report further states that he observed a set of footprints walking north on County Road 700 along the edge of the roadway. He followed the footprints north until they reached the pasture area where the body was found. The report states that [an] Investigator Mulbery pointed out that one of the footprints showed an imprint of a big toe.

Sheriff Byron Buzek of Saline County completed the State of Nebraska form of Investigator's Motor Vehicle Accident Report and also a death certificate listing the death on Line 26A as accident. The death certificate lists the immediate cause of death as hypothermia due to, or as a consequen[ce] of, exposure. [On] Line 26D of the death certificate Sheriff Buzek indicated that the vehicle became stuck in mud and decedent walked away from the vehicle into the elements.

The body of . . . Keating was transported to [BryanLGH Medical Center West] in Lincoln, Nebraska, for an autopsy, which was performed by Dr. Matthias Ok[o]ye. Dr. Ok[o]ye's autopsy report[,] which is in evidence, lists the cause of death of . . . Keating as exposure to cold weather. The autopsy report states in the summary that the manner of death is accident. This report describes findings of blunt force trauma to the head, the trunk and the upper and lower extremities. The findings with respect to other body organs and systems appear to be unremarkable.

The Defendant, J.C. Penney[,] sold to . . . Keating a policy of group accident insurance providing for accidental death and dismemberment benefits. J.C. Penney . . . issued to . . . Keating its Certificate of insurance showing an

effective date of April 7, 1999. A copy of the insurance policy is attached to [the beneficiaries'] Petition as Exhibit A. No copy of an Application for the policy of insurance was attached to or endorsed on the policy when issued as a part thereof.

In an order filed September 14, 2001, the trial court dismissed the beneficiaries' petition and stated that Keating's death was not the direct result of a collision or crash of her automobile, but resulted directly and independently from her disorientation.

The beneficiaries appeal.

## ASSIGNMENTS OF ERROR

On appeal, the beneficiaries contend that the trial court's order dismissing their petition is contrary to the law and is not supported by sufficient evidence. Specifically, the beneficiaries argue that the trial court erred in finding that Keating's death was not the direct result of a collision or crash of her automobile.

## STANDARD OF REVIEW

■ The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *Finch v. Farmers Ins. Exch.*, 265 Neb. 277, 656 N.W.2d 262 (2003); *Neff Towing Serv. v. United States Fire Ins. Co.*, 264 Neb. 846, 652 N.W.2d 604 (2002).

■ In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Krzycki v. Genoa Nat. Bank*, 242 Neb. 819, 496 N.W.2d 916 (1993). See *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002).

## ANALYSIS

On appeal, the beneficiaries contend that the trial court's order dismissing their petition is contrary to the law and is not supported by sufficient evidence. Specifically, the beneficiaries argue that the trial court erred in finding that Keating's death was

not the direct result of a collision or crash of her automobile as required under Keating's life insurance policy with J.C. Penney.

The relevant portion of Keating's contract states that an insured or the insured's beneficiaries can recover under the policy if a covered person is injured after being struck by a private passenger automobile or as a direct result of a collision or crash of a private passenger automobile.

█ When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Finch v. Farmers Ins. Exch., supra.*

In the instant case, the terms of Keating's insurance policy with J.C. Penney are not ambiguous, and thus, the terms of the policy are to be accorded their plain and ordinary meanings as the ordinary or reasonable person would understand them. The evidence on this record supports the trial court's determination that Keating's death was not the direct result of a collision or crash of Keating's automobile.

█ In an action on an accident policy for an insured's death, the burden of proof is on the beneficiary to show that the death was accidental. See *Rapp v. Metropolitan Accident and Health Ins. Co.*, 143 Neb. 144, 8 N.W.2d 692 (1943). In determining the issue as to whether the death was caused by an accident or through accidental means, within the contemplation of a policy, it is necessary to analyze the facts and circumstances of each case presented. *Id.*

In the instant case, the record shows that on April 8, 1999, Keating left her home in Omaha to pick up her dog at a veterinarian's office in west Omaha. When Keating failed to pick up her dog, Keating's son, Allen, reported Keating as missing. The Omaha Police Department's missing person report states that Keating was seen on April 8 by an unknown male who stated that Keating drove off the road at 60th and Center Streets and that he helped her get back on the road. The report also stated that the 911 emergency dispatch service had received on the same date an anonymous call from someone who had seen an elderly woman matching Keating's description acting confused and walking in an eastbound direction around 108th and Dodge Streets.

On April 9, 1999, at approximately 7:30 a.m., Keating's body was found in a field near Milligan, in Saline County, Nebraska, approximately 105 miles southeast of Omaha. Keating's automobile was found on a minimum maintenance dirt road which was somewhat muddy. Keating's automobile was stuck in a roadside ditch on the east side of the road. An inspection showed vehicle tracks weaving from one side of the road to the other. The evidence also showed damage to the driver's side of Keating's automobile, including some wood sticking out of the molding of the rear quarter panel. On the driver's side of the automobile, both the rearview mirror and the windshield wiper had been sheared off. The evidence showed that Keating had exited the automobile and climbed over a barbed wire fence, leaving both her shoes and her coat in her automobile.

The beneficiaries point to this evidence and state, "There was an obvious collision or crash with a tree and another when the car was driven into the roadside ditch." Brief for appellant at 19. J.C. Penney contends that even if a collision or crash occurred, such collision or crash was not the direct cause of Keating's death. We agree with J.C. Penney.

In Sheriff Byron Buzek's deposition, he stated that he had investigated the scene and that in his opinion, Keating's automobile was involved in some sort of collision. Buzek testified that he had observed some scratches on Keating, but attributed the scratches on Keating's head and trunk to the fact that Keating had climbed over a barbed wire fence. Buzek testified that in his opinion, Keating had not suffered any injuries while seated in her automobile. Buzek testified that Keating died as a result of exposure to the elements and that any injuries Keating suffered were not sufficient to cause her death. Additionally, the Investigator's Motor Vehicle Accident Report states in the description portion that "[Keating's] death was not caused by the accident."

Based on this evidence, the trial court found that Keating's death did not directly result from a "collision or crash" of her automobile.

## CONCLUSION

After considering the evidence in the light most favorable to J.C. Penney and resolving evidentiary conflicts in its favor, we

conclude that the trial court did not err in dismissing the beneficiaries' petition. The trial court's order dismissing the beneficiaries' petition is not contrary to the law and is supported by sufficient evidence. Furthermore, the trial court did not err in finding that Keating's death was not the direct result of a collision or crash of her automobile. For this reason, the trial court's order is affirmed in all respects.

AFFIRMED.