## Leslie F. Clausen, Appellant, v. Columbia National Insurance Company, a Corporation, Appellee.

510 N.W.2d 399

Filed May 11, 1993.   No. A-91-761.

Patrick W. Healey, of The Healey Wieland Law Firm, for appellant.

Dallas D. Jones, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

Sievers, Chief Judge, and Hannon and Irwin, Judges.

Irwin, Judge.

Leslie F. Clausen appeals from the district court's denying his motion for directed verdict and the court's granting the motion of Columbia National Insurance Company (Columbia) for directed verdict. Clausen alleges that the district court erred in (1) failing to hold that the particular insurance policy provisions were ambiguous as a matter of law and failing to sustain his motion for directed verdict, (2) sustaining Columbia's motion for directed verdict and refusing to submit his issues to the jury,

(3) excluding evidence as to who was in control and possession of the premises at the time of the loss, and (4) failing to hold as a matter of law that Columbia was estopped from disputing the existence of any coverage.

## STANDARD OF REVIEW

On appeal from the granting of a motion for directed verdict, an appellate court reviews the evidence in a light most favorable to the party against whom the motion is directed, and that party is entitled to have all controverted facts resolved in his favor and to have the benefit of all inferences which can reasonably be drawn from the evidence. *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991).

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992). The party against whom the motion is made is entitled to have any controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. *Id.*

## BACKGROUND

At the time of trial, Clausen had worked in the auto body business for 10 or 12 years. During that time period, he had been associated with several auto body shops before coming to work at Olston's Body Shop. Clausen was hired by Olston's in 1989 as a bodyman. James Olston was the owner of Olston's Body Shop and of a salvage yard located several blocks from the body shop. Olston's office was at the salvage yard. Darrell Swartz was the manager of the body shop and was in charge of opening and closing the business.

As was the custom of the trade, revealed through trial testimony, the body shop men furnished their own handtools. They normally left their tools in the body shop because the tool chests in which the tools were kept were large and heavy. Clausen kept his tools in a large tool chest with rollers and a lock on it. He had numerous tools, many of which were heavy and bulky.

The body shop is a metal building with two walk-through

doors and three overhead doors, as well as three windows. The front overhead door has an electric opener. After working hours, the fuse box is turned off. The two back overhead doors are padlocked, and the walk-through doors and the windows are locked after hours. The working hours at the body shop were from 8 a.m. to 5 p.m. Monday through Friday. The men were permitted to work on Saturday if they wanted. The only keys to gain entry to the body shop were possessed by Olston and Swartz.

Olston's purchased a commercial lines insurance policy from Columbia for the period December 21, 1989, through December 21, 1990. That policy provided coverage in pertinent part as follows:

### A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

. . . .

#### c. Personal Property of Others that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations . . . .

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

#### 2. Property Not Covered

Covered Property does not include:

. . . .

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance[.]

. . . .

#### 5. Coverage Extensions

Except as otherwise provided, the following Extensions apply to property located in or on the building described in

the Declarations . . . .

. . . .

**b. Personal Effects and Property of Others.**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

We note that the items stolen are not personal effects. The term "personal effects" ordinarily designates only such property that is worn or carried about the person. *In re Estate of Stengel*, 557 S.W.2d 255 (Mo. App. 1977); *In re Estate of Reitz*, 213 Kan. 534, 516 P.2d 909 (1973); *Estate of Johnson*, 5 Cal. App. 3d 173, 84 Cal. Rptr. 914 (1970). See, also, Black's Law Dictionary 1143 (6th ed. 1990). In any event, no coverage exists under provision b(1) because that extension of coverage does not apply to loss by theft. If coverage exists, it must be found in provision b(2).

Sometime after regular business hours on March 26, 1990, and prior to regular business hours on March 27, Clausen's tools were stolen from his tool chest which was located on the Olston's premises. Following discovery of the loss, Clausen contacted Olston and asked about insurance coverage. Olston said he would check into it, and later told Clausen that the tools were not covered. Clausen contacted the issuing agent of the insurance policy, Alexander & Alexander, Inc. He was told there was no coverage for his tools. He then went to an attorney regarding the matter. His attorney contacted Alexander & Alexander by letter on April 3, 1990, demanding payment of Clausen's loss. The claim was forwarded to Columbia, the company that had issued the policy. Glen Robbins, from Columbia, discussed the claim on more than one occasion by

telephone with Clausen's attorney after Robbins had investigated the claim. During these conversations, Robbins indicated that there was no coverage for Clausen's claim. Clausen then filed suit. At the conclusion of the evidence, the district court granted Columbia's motion for directed verdict, finding that Clausen's tools were not in the care, custody, or control of Olston's. Clausen's motion for directed verdict was overruled.

The sole question is whether the trial court erred in its holding that there was no policy coverage. This is a law action. We are not bound by the trial court's determinations of law. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992). See, also, *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207 (Iowa 1975). There is no dispute about the facts in this case. The issue is simply whether under those facts there is coverage under the policy. On review of a controversy involving the interpretation of an insurance policy where the underlying facts are not in dispute, the appellate court determines whether the trial court properly interpreted and applied the law to the facts presented.

In reviewing this case, we must first decide if the contract is ambiguous or not. If we find it to be unambiguous, we must determine what operative effect the language has on the facts of this case, since the facts were not disputed and appellant had moved for a directed verdict. The policy does not provide definitions of the terms "care, custody, or control."

## DISCUSSION

*Background.*

Most courts that have considered the phrase "care, custody, or control" in the context of insurance policies have construed it within the context of an exclusionary clause, as opposed to an extension of coverage clause in the contract, as in the present case. We note this distinction, but find it is not determinative in this situation.

General principles of construction are used when interpreting conditions of an insurance policy. An insurance policy is to be construed as any other contract. *Dobias v. Service Life Ins. Co.*, 238 Neb. 87, 469 N.W.2d 143 (1991).

Absent ambiguities, language in an insurance policy is to be given its common and ordinary meaning. *Polenz v. Farm Bureau Ins. Co.*, 227 Neb. 703, 419 N.W.2d 677 (1988); *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987).

Ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract. *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233 Neb. 248, 444 N.W.2d 676 (1989); *Lumbard v. Western Fire Ins. Co.*, 221 Neb. 804, 381 N.W.2d 117 (1986). Ambiguity in an insurance contract is to be resolved by the court as a matter of law. *Polenz v. Farm Bureau Ins. Co., supra*; *Malerbi v. Central Reserve Life*, 225 Neb. 543, 407 N.W.2d 157 (1987).

*Ambiguity.*

Neither party has cited, nor has this court found, any Nebraska cases deciding this particular issue. The following cases have held that "care, custody, or control" language is clear and unambiguous and should be given its plain and ordinary meaning: *Dubay v. Trans-America Ins. Co.*, 75 A.D.2d 312, 429 N.Y.S.2d 449 (1980), *appeal denied* 51 N.Y.2d 709, 417 N.E.2d 96, 435 N.Y.S.2d 1025; *Overson v. United States Fidelity and Guaranty*, 587 P.2d 149 (Utah 1978); *Amer. Family Mut. Ins. Co. v. Bentley*, 170 Ind. App. 321, 352 N.E.2d 860 (1976); *Torrington Co. v. Aetna Cas. & Surety Co.*, 264 S.C. 636, 216 S.E.2d 547 (1975); *Monari v. Surfside Boat Club, Inc.*, 469 F.2d 9 (2d Cir. 1972); *North American I. & S. Co. v. Isaacson Steel Erec., Inc.*, 36 A.D.2d 770, 321 N.Y.S.2d 254 (1971), *aff'd* 30 N.Y.2d 640, 282 N.E.2d 621, 331 N.Y.S.2d 667 (1972); *New Hampshire Ins. Co. v. Abellera*, 6 Wash. App. 650, 495 P.2d 668 (1972); *Royal Indemnity Company v. Smith*, 121 Ga. App. 272, 173 S.E.2d 738 (1970); *Mid-Continent Cas. Co. v. Peerless Boiler & Eng. Co.*, 398 P.2d 79 (Okla. 1964); *Madden v. Vitamilk Dairy, Inc.*, 59 Wash. 2d 237, 367 P.2d 127 (1961); *International Derrick & Equipment Company v. Buxbaum*, 240 F.2d 536 (3d Cir. 1957); *Edwards v. Travelers Indemnity Co.*, 201 Tenn. 435, 300 S.W.2d 615 (1957); and *Maryland Casualty Co. v. Holmsgaard*, 10 Ill. App. 2d 1, 133

N.E.2d 910 (1956).

In Hill v United States Fidelity & Guaranty Co. (1961) 48 **Tenn** App 419, 348 SW2d 512, the court held that the "care, custody or control" exclusion in a contractor's policy of liability insurance is clear and unambiguous.

Noting that there is judicial disagreement whether the words "care, custody or control," as used in exclusion clauses in policies of manufacturer's and contractor's liability insurance, are ambiguous or unambiguous, the court held in Madden v Vitamilk Dairy, Inc. (1961) 59 **Wash** 2d 237, 367 P2d 127, that they are unambiguous and must be given their plain and ordinary meaning. The words, the court explained, are not confined exclusively to the field of law, but are of common usage and connotation in the vocabulary of laymen. Annot., 8 A.L.R.4th 575 (1981).

The question of whether a provision in an insurance policy is ambiguous or not is a question of law. See *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988). Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992). We find that the terms "care, custody, or control" in the relevant provisions of the insurance policy are unambiguous and should be given their common and ordinary meaning.

In *Grana v. Security Insurance Group*, 72 Misc. 2d 265, 339 N.Y.S.2d 34 (1972), the court considered a provision, much like the provision in the present case, which extended coverage to, as opposed to excluded coverage from, the personal property of others in the care, custody, or control of the named insured. After reviewing the meanings of the terms "care" (" 'charge, supervision, management: responsibility for or attention to safety and well-being . . . custody: temporary charge' ") and "control" (" 'regulate: to exercise restraining or directing influence over: regulate: curb' "), the court held that the property was in the charge or custody of the insured. *Id.* at 268, 339 N.Y.S.2d at 37-38.

Even according to the dictionary, "care" is defined as

"temporary keeping, as for the benefit of or until claimed by the owner," Webster's Encyclopedic Unabridged Dictionary of the English Language 223 (1989); "control" is defined as "regulation; domination or command," *id.* at 318-19; and "custody" is defined as "keeping; guardianship; care," *id.* at 357. If the insured fulfilled one of the above requirements regarding personal property belonging to others, while in the insured's care, custody, or control, then coverage is extended to such property.

We hold that the property of Clausen was covered as "[p]ersonal property of others." The policy plainly did not contemplate that only the owner's property would be covered, since this provision was specifically intended to cover personal property of others.

The body shop required Clausen to possess many heavy, substantial tools in order to be employed there. It was impractical for Clausen to remove such tools each night. The body shop allowed Clausen to keep his tools stored overnight in the building. There was an implied invitation to Clausen, held out by the shop, to leave his tools required for employment in the shop after working hours. There was a mutual benefit to both Clausen and Olston's. In effect, there was a bailment. Some courts have used bailment to resolve this very issue. See *Grana v. Security Insurance Group, supra.*

The stolen tools were, at the time of loss, obviously in the care, custody, or control of Olston's, as the tools were required to be brought to Olston's workplace as a condition of employment, and the tools were allowed to be left there during nonworking hours. After working hours, Olston's, and no one else, had care, custody, or control of the building and everything in it. Olston's alone had control of who had keys and who could enter the premises. Olston's was fully in control of what, if any, security arrangements were provided for the property and its contents. Olston's made the decision as to who was there and who was allowed to be there after working hours. After working hours, Clausen had no access to or control over the tools on the business premises, except by consent of and with arrangements acceptable to Olston's. On the night the loss occurred, Olston's fully controlled the premises.

## CONCLUSION

Since the facts are undisputed or are such that reasonable minds can draw but one conclusion therefrom, and because we decide the phrase "care, custody, or control" is not ambiguous, a directed verdict should have been entered in favor of Clausen. Clausen's tools were in the care, custody, or control of Olston's at the time of the loss, and therefore, there is coverage under the insurance policy for the loss of Clausen's tools. Because we so hold, we do not discuss the remaining assignments of error. The cause is remanded to the district court with directions to enter a directed verdict in favor of Clausen and to hold further proceedings on the issue of Clausen's damages.

REVERSED AND REMANDED WITH DIRECTIONS.