**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MONUMENTAL PAVING & EXCAVATING,
INCORPORATED,
Plaintiff-Appellant,

v.                                                                  No. 96-2858

PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-96-1722-AMD)

Argued: June 6, 1997

Decided: May 18, 1999

Before RUSSELL,* WIDENER, and WILKINS, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded with instructions by
published opinion. Judge Widener wrote the opinion, in which Judge
Wilkins concurred.

_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** James David Mathias, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellant. Geoffrey Stetson Gavett, GAVETT & DATT, P.C., Rockville, Maryland, for Appellee. **ON BRIEF:** Glen K. Allen, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellant. Rhoda S. Barish, GAVETT & DATT, P.C., Rockville, Maryland, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Monumental Paving & Excavating, Inc. (Monumental) appeals from a decision in favor of its insurer, Pennsylvania Manufacturers' Association Insurance Company, the PMA Group, entered by the United States District Court for the District of Maryland on cross-motions by the parties for summary judgment. Monumental initiated the action after PMA denied coverage of certain of the losses which resulted from a fire on Monumental's premises. The decision of the district court is affirmed in part and reversed in part.

I.

There is no dispute as to the material facts. On December 9, 1995 a fire destroyed Monumental's maintenance shop building on Monumental's premises at 1805-1815 Edison Highway, in Baltimore, Maryland. Among the items of personal business property contained in the building and destroyed in the fire were two Patch Masters, machines which Monumental utilized in its paving business to melt and mix asphalt in the repairing of pot holes and other paving defects. The Patch Masters functioned as melting pots for the materials used in the paving and were equipped with radiant heat panels which melted the area of pavement surrounding the repair, thereby preventing the creation of a weaker cold seam in the asphalt surface. Monumental's Patch Masters were each permanently affixed to Ford truck chassis and cab; however, it is possible to mount them on trailers. Normally they were not kept in the burned maintenance building,

2

building number 002 on the insurance policy. According to Monumental, they were inside at the time of the fire due to harsh weather.

There is no dispute but that at the time of the fire, Monumental had a Commercial Package Policy of insurance with PMA. That plan consisted of four Coverage Parts which included (1) Commercial Property Coverage; (2) Commercial General Liability Coverage; (3) Commercial Crime Coverage; and (4) Commercial Inland Marine Coverage. The Commercial Property Coverage part of the policy provided Monumental with "blanket building and business personal property coverage for all locations" at "replacement cost value" with a total limit of $686,000. Replacement cost value is the cost of replacement without deduction for depreciation. Additionally, this portion of the policy provided coverage for lost business income in the amount of $50,000. The Commercial Inland Marine part provided insurance for those items of Contractor's Equipment specified in the included schedule by Monumental. Monumental included therein the Patch Masters which were valued at $37,500 each, or a total of $75,000, which represented their actual cash value, or cost of restoration or replacement, whichever be less, rather than their replacement value.

Monumental and PMA settled a substantial portion of the claims resulting from the fire. However, they could not agree on two issues. First, Monumental claimed that under the Commercial Property Coverage, it was entitled to recover from PMA the replacement value of the Patch Masters, which Monumental estimates is about $425,000, because the units fell within the blanket coverage as they were in the maintenance building which burned. PMA refused to pay the replacement value of the Patch Masters, asserting that Monumental was only entitled to $75,000 because that was the amount Monumental had listed on the Inland Marine Contractor's Equipment Schedule. The second point of contention is that Monumental claimed it was entitled to apply the $50,000 of business income coverage to the loss of business income and extra expenses that it claimed resulted from the destruction of the Patch Masters and other property. PMA refused payment because it contended that the business income insurance covered only the destruction of one specific building on the premises (not the one destroyed) rather than the destruction of any of the buildings.

Monumental, in a two-count complaint, brought suit to settle the outstanding claims, and subsequently the parties filed their respective motions for summary judgment. The district court decided in favor of PMA on both counts, and Monumental has appealed.

II.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). We review the district court's grant of summary judgment de novo. Roe v. Doe , 28 F.3d 404, 406-7 (4th Cir. 1994). In doing so, we consider the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255 (1986). When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact. ITCO Corp. v. Michelin Tire Corp., Com. Div., 722 F.2d 42, 45, n.3 (4th Cir. 1983), cert. denied, 469 U.S. 1215 (1985). Instead, we consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard. See Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (2d ed. 1983).

III.

The facts are not disputed, so what we are faced with is a question of the legal effect of this insurance contract. Count One of Monumental's complaint alleges that the contractor is entitled to the replacement value of the Patch Masters because they fit within the "Building and Personal Property" coverage section of the policy's definition of "covered property." That section defines "covered property" as including equipment within the insured buildings.

> 1. Covered Property
>
> Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations: . . .

4

b. Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on Your Business Personal Property - Separation of Coverage form: . . .

(2) <u>Machinery and equipment</u>;

(3) Stock;

(4) <u>All other personal property owned by you</u> and <u>used in your business</u>;

Building and Personal Property Coverage Form, A.1.b.(2)-(4) (emphasis added). Monumental acknowledges that its Patch Masters were specifically covered under the Commercial Inland Marine policy for their actual cash value, or cost of restoration or replacement, whichever be less, and that it would only have received that amount of $75,000 had the units been destroyed with no coverage except the Commercial Inland Marine section of the policy. Notwithstanding this, Monumental asserts that the units fall within the definition of covered property by virtue of being equipment that was within the maintenance building at the time of the fire, and that Monumental is entitled to their replacement value.

Like any insurance policy, this one contains exceptions to coverage, two of which PMA argues prevent Monumental from recovering under the business personal property policy. First, Monumental asserts, and the district court agreed, that Exclusion (k) prevented coverage of the Patch Masters under the blanket policy.

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that insurance.

Building and Personal Property Coverage Form, A.2.k. PMA asserts that where the Patch Masters were scheduled under the Contractor's

5

Equipment Coverage Form of the Inland Marine portion of the policy at a total of $75,000, and where that form stated that the scheduled amount was "the most that we will pay for a loss of that item," no amount was due in accordance with Exclusion (k) as replacement value over and above the $75,000 that PMA agreed to pay.

The district court agreed with PMA's analysis. Further because the court found the replacement value of the blanket policy to be inconsistent with the scheduled actual value of the Patch Masters, the court looked to whether, outside of the contract, there was any evidence that the parties had ever intended that the replacement value apply rather than the actual value that was due under the Commercial Inland Marine policy. The district court determined that "Monumental has failed to establish the existence of genuine material fact relative to its expectation of replacement cost coverage for the Patch Masters at the time it purchased the PMA policy." The court placed great weight on the fact that in its statement of values, which PMA used to determine the premium and limits of the blanket policy, Monumental listed the personal property in the burned building as worth $15,000, an amount far below the replacement value it was claiming for the Patch Masters. The court noted that while the blanket policy limit of $686,000 would cover the claimed $400,000 replacement value of the Patch Masters, this was only possible because the limit was calculated at 90% of the value of the personal property in all four buildings (a total of $116,667), and the buildings themselves, which were valued by Monumental at $645,555. On this basis the court found that under Exclusion (k) there was no evidence that Monumental had reasonably expected to receive the replacement value of the Patch Masters when it bought the policy, and therefore the court entered judgment as a matter of law in favor of PMA.

IV.

We are of opinion that the definition of "covered property" squarely includes the Patch Master units and that the district court erred in its analysis of Exclusion (k). The district court felt that it was inconsistent for the Inland Marine portion of the policy to provide coverage at the actual value while the blanket policy provided for replacement value. Based on this inconsistency, the court found there was ambiguity which warranted the examination of extrinsic evidence

6

as to the intent of the parties and that their intent was that the coverage only insured the Patch Masters at their actual value.

We find no inconsistency between the two policy portions, and certainly no ambiguity in Exclusion (k). The district court found, and the parties do not dispute, that the Commercial Property Coverage portion provided Monumental "blanket" protection for the building and business personal property up to a $686,000 limit. A blanket policy by definition covers different types of property at one or more locations and does not specify the valuation of the items protected under the blanket, but allocates an overall limit to the policy, upon which premiums are based.

> A blanket, compound, or floater policy is written upon a risk as a whole, embracing whatever articles or items are included therein, often changing in nature; in contravention thereto, a specific policy is one which allocated the amount of risk in stated values upon the several items embraced in the coverage. ...

6 Appleman, Insurance Law & Practice, § 3912. The blanket policy, then, by definition, did not require that Monumental assign values to each individual item of business personal property that fell within the policy limit. "The statement of values used in connection with a blanket policy is not a part of the policy but is furnished by an assured . . . for the purpose of arriving at an average rate for a blanket policy." Reliance Insurance Co. v. Orleans Parish School Board, 322 F.2d 803, 806 (5th Cir. 1963), cert. denied, 377 U.S. 916 (1964). In that connection, we note that the term blanket policy has been judicially defined in this circuit.

> The expression "blanket policy" is a term of art in the field of insurance. It appears to be most frequently used in connection with fire insurance policies and has acquired a rather precise connotation. A blanket policy is said to be one which contemplates the risk of shifting, fluctuating or varying, and is applied to a class of property rather than to any particular risk or thing . . . . A compound or blanket policy invariably covers and attaches to every item of property described in the policy and insures the property collectively,

7

without providing in the event of loss for a distribution of the insurance to each item. Nat'l Bank v. Fidelity and Casualty Co., 125 F.2d 920, 924 (4th Cir. 1942).

Applying the Orleans Parish and Nat'l. Bank cases to the facts of this case requires the conclusion that because the Patch Masters were business personal property in the building which burned they were explicitly insured under the insuring clause of the policy, and the district court erred in finding an ambiguity as to coverage. Its essential error was in not recognizing the characteristics of a blanket policy. Our construction of the policy is consistent with another provision of the applicable section of the policy provided for in the Business and Personal Property Coverage Form, "A. COVERAGE, Under part 1.b(2)" is the explicit provision for coverage of"Business Personal Property, Machinery and Equipment" located "in or on the building described" or "in the open (or in a vehicle) within 100 feet of the described premises." So, if the Patch Masters had been in the open but within 100 feet of the building, they would have been explicitly covered under the terms of the policy. It is a greater jump of logic than we can subscribe to, to say that if the Patch Masters had been in the open within 100 feet of the building which burned, they would have been covered, but since they were in the burned building, they were not covered. Finally, pre-Erie, and before the reorganization of the Courts of Appeals, the Supreme Court construed, as we do here, a blanket policy of insurance under Maryland law. Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 541 (1876). That case cautioned against going outside the wording of the coverage of an insurance policy, as the district court did here, to find ambiguity, and the Court, in finding coverage, stated that ". . . the subject of the insurance, its nature and its extent, are to be ascertained from words of the contract which the parties have made." 93 U.S. at 541. The words of the contract made by the parties in this case are plain. The business personal property located in or on the building described, or in the open (or in a vehicle) within 100 feet of the described premises, is insured. We hold there is no ambiguity in this policy.

To repeat, Exclusion (k) provides:

> k. Property that is covered under another coverage form of this or any other policy in which it is more specifically

8

described, except for the excess of the amount due (whether you can collect on it or not) from that insurance.

As Monumental has pointed out, Exclusion (k) is what is called in the insurance business an "excess insurance clause." Notably, Exclusion (k), like all the provisions of the "Building and Personal Property Coverage Form," is an exact copy of the standard insurance form "CP 00 10 10 91," as indicated at the bottom of the pages by the label "Copyright, ISO Commercial Risk Services, Inc. 1990CP 00 10 10 91." See Susan J. Miller & Philip Lefebvre, Miller's Standard Insurance Policies Annotated, Vol I., p. 458, Form CPCOV (Business and Personal Property Coverage Form), Subsection (k) 4th Ed. 1995). See Clausen v. Colombia National Insurance Co., 510 N.W.2d 399, 401 (Neb. App. 1993) (finding coverage without discussion despite an Exclusion (k) clause identical to the one here). Other courts have found this standard clause to be an excess clause. See Utica Mut. Ins. Co. v. Travelers Ins. Co., 624 N.Y.S.2d 485, 486-87 (N.Y. App. Div. 1995) (noting that an identical clause in that contract is "characterized as an excess clause;" citing 71 N.Y. Jr. 2d Insurance § 1984, at 334-35). See also Klotz Tailoring Co. v. Eastern Fire Ins. Co., 102 N.Y. Supp. 82 (App. Div. 1907); Wilson & Co. v. Hartford Fire Ins. Co., 254 S.W. 266 (Mo. 1923).

An "excess clause" is a type of "other insurance" which typically provides that "`the policy' shall apply only as excess insurance over any other insurance." R. Keeton & A. Widiss, Insurance Law § 3.11(a) (1988). Under an excess clause the insurer remains liable "up to the limits of the policy containing the excess clause." Barry B. Ostrager, Thomas R. Newman, Handbook on Insurance Coverage Disputes, § 11.02(b) (5th ed. 1992). This is distinct from an "escape" clause which provides that the insurer has no liability if there is other insurance. Keeton & Widiss, Insurance Law§ 3.11(a). See Am. Jr. 2d Insurance § 1789 (2d ed. 1982) (distinguishing excess clause under which insurer "is liable only for the amount of loss or damage in excess of the coverage provided by the other policy or policies of insurance" from clauses that contain "an express provision against liability where there is other more specific insurance" which "absolve the insurer from liability if other more specific insurance" is obtained). See also Couch On Insurance,§§ 1:5; 148:27 (3d ed. 1998).

9

Thus, applying standard form Exclusion (k) to the case at hand, it is clear that the Inland Marine Coverage section of the policy constituted a more specific form of insurance for the Patch Masters. The two units were there collectively scheduled as having an actual value of $75,000. Accordingly, that amount of $75,000 cannot be collected under the Blanket Policy, because it is excepted from the blanket policy under Exclusion (k). However, under the second part of that same Exclusion (k), because the blanket policy insures the personal business property in the building at replacement value, and the replacement value of the two Patch Masters purportedly exceeds $400,000, the excess over the $75,000 due under the Inland Marine part of the policy is excepted from Exclusion (k) and therefore is covered by the blanket policy. The district court converted the Exclusion (k) excess clause into an escape or non-liability clause by concluding that the fact that the Inland Marine Policy provided for actual value rejected the replacement value coverage provided under the blanket policy. This was error, as there is nothing preventing a contractual agreement for different standards of value for losses under different parts of the policy.

Due to its ruling on Exclusion (k), the district court did not reach the issue of whether Exclusion (o) removed the Patch Masters from the blanket policy. It correctly assumed that the Patch Masters were equipment. Exclusion (o) removes from the policy certain vehicles.

> o. Vehicles or self-propelled machines (including aircraft or watercraft) that:
>
> (1) Are licensed for use on public roads; or
>
> (2) Are operated principally away from the described premises.

Building and Personal Property Coverage Form, A.2.o. PMA asserts that once the Patch Masters were purchased, they were permanently affixed to the chassis, creating mobile units which the company brochures and the fire department report referred to as trucks. PMA asserts that Monumental's brochures indicated that these vehicles repaired asphalt away from the insured premises at the customer's

10

location, and its argument is that therefore the Patch Masters should be excluded under Exclusion (o).

Monumental's brochures do refer to the Patch Masters as specially equipped trucks. However, Monumental's advertisements and the fire department's reports are hardly dispositive of how the Patch Masters are to be treated under the insurance contract. The Patch Masters here were scheduled under the Inland Marine Coverage part as separate items of "Contractor's <u>Equipment</u>" (emphasis added). Moreover, the Contractor's Equipment Coverage, similar to the business property coverage, explicitly excludes "self-propelled vehicles that are designed for highway use." Contractor's Equipment Coverage, exclusion 6. Further, each Ford chassis and cab which bore a Patch Master was separately insured under a distinct commercial automobile policy not discussed previously herein.

We are of opinion that the Patch Master units do not fall within the ordinary meaning of "vehicles or self-propelled machines" as excluded by Exclusion (o), and thus they remain within the blanket coverage.

Accordingly, the district court's ruling as to count One is reversed.

V.

The claim with respect to Count Two, for lost business income, is less complicated. Monumental claims that it is entitled to apply the $50,000 business income coverage towards income loss related to the fire at building 2. In support of its claim, Monumental cites the language of the Business Income Coverage Form which provides that PMA

> will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the <u>premises described in the Declarations</u> . . . .

Business Income Coverage Form ¶ A (emphasis added). Monumental argues that the only premises described in the Declarations is "prem-

11

ises 001," which includes the entire Monumental property, all of 1805-1815 Edison Highway, including building 002.

The district court correctly rejected this claim. The loss of business income is only as a result of "loss of or damage to property at the premises described in the Declarations." The Declarations section of the policy provides that:

_____

PREMISES PROVIDED: Insurance at the described premises applies only for coverages for which a limit of insurance is shown. COIN-SURANCE CLAUSE APPLIES IF o/o IS INDICATED.

_____

| Prem No | Bldg No | Coverage | Limit of Insurance |
|---|---|---|---|
| | | BLANKET BUILDING AND BUSINESS PERSONAL PROPERTY COVERAGE FOR ALL LOCATIONS EXCEPT AS LISTED BELOW: | |
| 001 | 001 | BUSINESS INCOME INCLUDING EXTRA EXPENSE OPTION III RENTAL VALUE CONSTRUCTION: JOISTED MASONRY | $50,000 |

_____

We thus see that the premises are 001 and the building number is 001. The building is constructed of "joisted masonry". Referring back to the Designation of Premises Schedule, we see that it is in the following form:

_____

| Prem No | Bldg No | Designated Premises Address, City, State |
|---|---|---|
| 001 | 001 | 1805-1815 EDISON HIGHWAY, BALTIMORE, MD 21213-1527 |
| 001 | 002 | 1805-1815 EDISON HIGHWAY, BALTIMORE, MD 21213-1527 |
| 001 | 003 | 1805-1815 EDISON HIGHWAY, BALTIMORE, MD 21213-1527 |

12

001 004 1805-1815 EDISON HIGHWAY, BALTIMORE, MD
       21213-1527

002     106-108 SORRENTO AVENUE, BALTIMORE, MD
       21229-3422

_____

From this we see that there were two premises insured, 001 at 1805-1815 Edison Highway, consisting of four buildings, 001-004; and premises 002 at 106-108 Sorrento Avenue, with no building designation. We are of opinion that a fair reading of the phrase "the premises described in the declarations" means building 001 at 1805-1815 Edison Highway. The addition of "joisted masonry" to describe its construction would have no other purpose than to describe the building, and this is especially true in this case since building 002, the building which burned, had frame construction.

We are thus of opinion that the loss of business income provision does not cover that attributed to the burning of building 002.

VI.

For the reasons expressed, the decision of the district court with respect to Count One, that is to say, liability on account of the destruction of the two Patch Masters, is reversed; the decision of the district court with respect to Count Two, that is to say, the business income insurance, is affirmed. The case must be remanded for the district court to ascertain the damages due to Monumental in accordance with this decision. On remand, the district court will ascertain the replacement value of the Patch Masters and enter its judgment in favor of Monumental on that account.

<u>AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS</u>*

_____

*Any defense of estoppel made by PMA is without merit.

13