652 N.W.2d 604 (2002)
264 Neb. 846
NEFF TOWING SERVICE, INC., Appellee,
v.
UNITED STATES FIRE INSURANCE CO., doing business through Crum & Forster Insurance, appellant.
No. S-01-960.
Supreme Court of Nebraska.
November 1, 2002.
*606 Thomas M. Locher, Thomas M. Braddy, Omaha, and Ralph A. Froehlich, Bellevue, of Locher, Cellilli, Pavelka & Dostal, L.L.C., Omaha, for appellant.
Eugene L. Hillman and Patricia McCormack, of Hillman, Forman, Nelsen, Childers & McCormack, Omaha, for appellee.
HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
STEPHAN, J.
In this declaratory judgment action, United States Fire Insurance Co. (USFIC) appeals from an order of the district court for Douglas County determining that an insurance policy issued to Neff Towing Service, Inc. (Neff Towing), provided liability coverage for a property damage claim asserted against Neff Towing. We reverse, based upon our conclusion that the claim falls within an exclusion to the liability coverage provided by the policy.

BACKGROUND
The relevant facts are either stipulated or uncontroverted. Neff Towing is a Nebraska corporation with its principal place of business in Omaha, Nebraska. It is engaged in the business of providing towing and trucking services. USFIC is a New York corporation with its home office located in the State of New York. USFIC issued insurance policy No. 136 145274 3 to Neff Towing, effective December 10, 1993, to December 10, 1994. The policy, referred to as a "Garage Policy," defines "`[g]arage operations'" as follows:
"Garage operations" means [sic] the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes [sic] the ownership, *607 maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos." "Garage operations" also include all operations necessary or incidental to a garage business.
The term "`[a]uto'" is defined by the policy to mean "a land motor vehicle, trailer or semi-trailer." A schedule in the policy lists "autos" owned by Neff Towing, including a 1985 GMC wrecker and a 1984 Freightliner tractor. The policy includes both "Liability Coverage" and "Garagekeepers Coverage," which are described in separate sections of the policy.
Under the Liability Coverage, the term covered "autos" includes the scheduled vehicles owned by the insured, as well as certain hired and nonowned vehicles used in connection with the insured's garage business. The Liability Coverage provides, under the heading "`Garage Operations'Covered `Autos'":
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."
....
We have the right and duty to defend any "suit" asking for such damages.... However, we have no duty to defend "suits" for ... "property damage" ... not covered by this Coverage Form.
The "Exclusions" section of the Liability Coverage provides that coverage does not apply to property damaged while in the insured's "care, custody or control."
Under the separate "Garage Coverage Form" provided by the policy, a covered "auto" is defined as "[a]ny customer's `auto' while left with your `garage operations' for service, repair, storage or safekeeping." The Garagekeepers Coverage obligates USFIC to
pay all sums the "insured" legally must pay as damages for "loss" to a covered "auto" or "auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations"... [c]aused by ... (1)[t]he covered "auto's" collision with another object; or (2)[t]he covered "auto's" overturn.
The Garagekeepers Coverage further provided that USFIC had the "right and duty to defend any `suit' asking for these damages," but no duty to defend suits for losses which were not covered.
On November 12, 1994, Neff Towing was called to tow a disabled tractor-trailer unit owned by CRST, Inc., from a location near mile marker 17 on Interstate 80 east of Council Bluffs, Iowa. Neff Towing dispatched two towing vehicles to the scene of the disabled CRST tractor-trailer unit. One towing unit was a 1985 GMC wrecker, and the other was a 1984 Freightliner tractor. Neff Towing's GMC wrecker removed the disabled tractor from the scene, leaving the trailer unattached. While Neff Towing was attempting to attach its Freightliner tractor to the trailer, the trailer tipped onto its side and was damaged. Neff Towing's employee left the scene without attaching the trailer to the towing unit. On the following day, the president of Neff Towing returned to the scene where he observed CRST loading cargo from the damaged trailer onto another tractor-trailer, which was then driven away. Neff Towing then righted the damaged empty trailer and towed it away for repairs. Pursuant to the Garagekeepers Coverage under the aforementioned policy, USFIC paid CRST $9,187.99 in full settlement of the damage to its trailer. The Garagekeepers Coverage did not extend to the cargo which had been *608 contained in the trailer at the time of damage. Unlike the Liability Coverage which covers "`property damage,'" defined as "damage to or loss of use of tangible property," the Garagekeepers Coverage is limited to paying for damages to a covered "`auto'" or "`auto' equipment."
Thereafter, CRST filed suit against Neff Towing, alleging that CRST delivered and transferred possession of the trailer to Neff Towing for the purpose of towing the trailer from the roadside on November 12, 1994, and that when CRST reclaimed possession of the trailer on the following day, its contents were damaged in the amount of $53,438, which CRST sought to recover with interest. Neff Towing filed an answer specifically alleging that "on or about November 12, 1994, defendant Neff Towing did come into possession of a trailer owned and operated by the plaintiff for purposes of towing said trailer." Neff Towing specifically denied that "the contents of the trailer, while in the possession of [Neff Towing] were damaged in the nature and to the extent as alleged in plaintiff's petition."
When Neff Towing's tender of the defense of this action to USFIC was declined, Neff Towing filed this declaratory judgment action in which it sought a determination that coverage for the cargo loss claim was afforded under the Liability Coverage of the USFIC Garage Policy described above. Both parties filed motions for summary judgment. At the hearing on the motions, arguments centered upon whether the claim of CRST was excluded by the "care, custody or control" exclusion in the policy's Liability Coverage. Counsel for USFIC argued that the exclusion applied because Neff Towing judicially admitted, in its answer to the petition filed by CRST, that it had taken possession of the trailer. Based upon the stipulated facts, the pleadings in the underlying action, and an uncontroverted affidavit, counsel for Neff Towing argued that the CRST trailer was "knocked over and damaged" before it ever came under the "care, custody, and control" of Neff Towing, and therefore the exclusion did not apply.
The district court sustained Neff Towing's motion for summary judgment and overruled that of USFIC. The district court reasoned that while it was obligated to consider the pleadings in the underlying suit by CRST against Neff Towing, it could also consider other pertinent facts as stipulated by the parties in determining whether the exclusion was applicable. The court determined that the exclusion was unambiguous but held that it was inapplicable because the stipulated facts revealed that Neff Towing was attempting to attach its tractor to the CRST trailer when the accident occurred, but never succeeded in doing so. For this reason, the district court concluded that "Neff Towing never had ... care, custody, and control" of the trailer and its contents. It held that USFIC had a duty to defend Neff Towing in the action brought against it by CRST and to indemnify it for any damages adjudged against it pursuant to the Liability Coverage of the aforementioned policy.
USFIC perfected this timely appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb.Rev.Stat. § 24-1106(3) (Reissue 1995).

ASSIGNMENTS OF ERROR
USFIC assigns that the district court erred in granting Neff Towing's motion for summary judgment and denying its own motion for summary judgment.

*609 STANDARD OF REVIEW
Generally, the denial of a motion for summary judgment is not a final, appealable order. However, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. Knudsen v. Mutual of Omaha Ins. Co., 257 Neb. 912, 601 N.W.2d 725 (1999).
When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question. Ohio Cas. Ins. Co. v. Carman Cartage Co., 262 Neb. 930, 636 N.W.2d 862 (2001).
The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. American Fam. Mut. Ins. Co. v. Hadley, 264 Neb. 435, 648 N.W.2d 769 (2002); Reisig v. Allstate Ins. Co., 264 Neb. 74, 645 N.W.2d 544 (2002).

ANALYSIS
As noted, the insurance policy in question provides separate Liability Coverage and Garagekeepers Coverage. In its operative second amended petition, Neff Towing alleges that any liability it may have to CRST for damage to the contents of its trailer is covered under the policy's Liability Coverage; it makes no claim under the Garagekeepers Coverage. The district court specifically determined that the latter coverage was inapplicable, and neither party has taken exception to this ruling. Accordingly, we focus our attention on the Liability Coverage to determine whether USFIC had a duty to defend or indemnify Neff Towing with respect to the CRST property damage claim.
In construing liability insurance policies, we have held that an insurer's duty to defend is broader than its duty to indemnify. Ohio Cas. Ins. Co. v. Carman Cartage Co., supra; John Market Ford v. Auto-Owners Ins. Co., 249 Neb. 286, 543 N.W.2d 173 (1996); Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636 (1981). However, in a case such as this, where the facts are undisputed, a determination that a duty to defend exists will likewise be determinative of the existence of a duty to indemnify. The specific issue to be resolved is whether CRST's property was in the "care, custody, or control" of Neff Towing at the time the damage occurred. If this question is resolved in the negative, the policy exclusion claimed by USFIC is inapplicable and both a duty to defend and a duty to indemnify exist. If, however, the property was in the "care, custody, or control" of Neff Towing when damaged, the exclusion applies and USFIC has neither a duty to defend nor a duty to indemnify.
Familiar general principles guide our determination of whether, as a matter of law, the claimed coverage exclusion applies to the undisputed facts of this case. An insurance policy is a contract. An insurance contract is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. American Fam. Mut. Ins. Co. v. Hadley, supra. Parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent *610 with public policy or statute. American Fam. Mut. Ins. Co. v. Hadley, supra; Farm Bureau Ins. Co. v. Witte, 256 Neb. 919, 594 N.W.2d 574 (1999). While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. American Fam. Mut. Ins. Co. v. Hadley, supra; Volquardson v. Hartford Ins. Co., 264 Neb. 337, 647 N.W.2d 599 (2002). Generally, where the event for which an insured seeks coverage is plainly outside the scope of the coverage encompassed in the policy according to a plain reading of its terms, an insurer may not be obligated to provide coverage to the insured. Farm Bureau Ins. Co. v. Witte, supra,
The first step in our analysis requires that we determine whether the coverage exclusion is ambiguous. The district court cited Clausen v. Columbia Nat. Ins. Co., 1 Neb.App. 808, 510 N.W.2d 399 (1993), for the proposition that the phrase "care, custody, or control" used in an insurance policy with reference to personal property is not ambiguous. In Clausen, the Nebraska Court of Appeals considered this phrase in the context of a provision in a commercial lines insurance policy which extended coverage to personal property of others in the "`care, custody or control'" of the insured. 1 Neb.App. at 810, 510 N.W.2d at 401. The court cited a line of cases from other jurisdictions that held the phrase to be unambiguous and noted that while most of those cases considered the phrase in the context of a coverage exclusion, rather than an extension of coverage, that distinction was not determinative. The Court of Appeals held that the phrase "`care, custody, or control'" was "unambiguous and should be given [a] common and ordinary meaning." Id. at 814, 510 N.W.2d at 403. The court noted that the term "`care,'" when used in reference to personal property, would include such concepts as charge, supervision, management, responsibility for or attention to safety and well-being, and temporary keeping for the benefit of the owner; "`custody'" would encompass a temporary charge or keeping; and "`control'" would include the exercise of regulation, influence, domination, or command with respect to property. Id. at 814-15, 510 N.W.2d at 403-04, quoting Grana v. Security Insurance Group, 72 Misc.2d 265, 339 N.Y.S.2d 34 (1972), and Webster's Encyclopedic Unabridged Dictionary of the English Language (1989). We agree with this analysis and conclude that the phrase "care, custody, or control" as used in the USFIC Garage Policy is unambiguous.
In determining whether the CRST claim against Neff Towing falls within the exclusion, USFIC argues that we should consider only the pleadings in the underlying case in which Neff Towing admitted that it "did come into possession of a trailer owned and operated by the plaintiff for purposes of towing said trailer." USFIC argues that this constitutes a judicial admission which conclusively establishes the applicability of the exclusion and forecloses examination of other facts pertinent to the claim. However, our law is well settled that in determining its duty to defend, an insurer must not only look to the petition, but must also investigate and ascertain the relevant facts from all available sources. Mapes Indus, v. United States F. & G. Co., 252 Neb. 154, 560 N.W.2d 814 (1997); Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636 (1981). If an insurer must look beyond the pleadings to ascertain relevant and available facts in deciding whether it is obligated to accept a tender of defense by an insured, it logically follows that a court *611 which is asked to determine whether a duty to defend exists in a declaratory judgment action should likewise expand its focus beyond the pleadings, particularly in a case such as this where all relevant facts are known and not disputed. Accordingly, in our independent determination of the question of law presented in this appeal, we consider all of the evidence received and considered by the district court.
In its ruling from the bench, the district court repeatedly used the phrase "care, custody, and control" in referring to the exclusion. (Emphasis supplied.) We deem it significant that the language of the policy is plainly stated in the disjunctive, i.e., "care, custody or control." (Emphasis supplied.) Thus, if the facts establish any one of the three relationships between Neff Towing and the property of CRST, the exclusion applies. See Clausen v. Columbia Nat. Ins. Co., 1 Neb.App. 808, 510 N.W.2d 399 (1993). Neff Towing argues, and the district court held, that because it was unsuccessful in actually attaching the CRST trailer to its towing unit, it never exercised care, custody, or control of the property. This argument is unrealistically narrow because it focuses exclusively on the factor of "custody," while ignoring "care" and "control." We determine that the better rule is "[w]here ... the insured has undertaken the responsibility for maintaining personal property and is in fact attempting to exercise control thereof at the time of an occurrence which damages the property ... the insured has that degree of care, custody or control of the property contemplated by the [liability coverage] exclusion." Howard Assoc. v. Home Indem. Co., 34 Colo.App. 390, 392-93, 528 P.2d 980, 981 (1974).
When CRST requested that Neff Towing tow CRST's disabled tractor-trailer unit laden with cargo, CRST authorized Neff Towing to exercise that degree of control over the property necessary to physically remove it from the roadside to a place of safety. This was of mutual benefit to CRST, which had an interest in protecting its stranded property, and Neff Towing, which was in the business of providing towing services. Neff Towing was the only entity authorized by the owner of the property to remove it from the roadside. This necessarily involved the exercise of "care, custody, or control" over the property. Neff Towing first acted pursuant to this authority when it detached the disabled tractor from its trailer and towed the tractor away. Neff Towing continued to exercise its right of control by backing its towing unit under the now-separated trailer in an unsuccessful attempt to couple the trailer to the towing unit so that the trailer also could be removed from the roadside. It was this very act of exercising control over the trailer which allegedly caused the cargo damage claimed by CRST. Although an insurer is obligated to defend all suits against the insured, even if groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy. Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 243 Neb. 779, 502 N.W.2d 484 (1993); Iowa Mut. Ins. Co. v. Meckna, 180 Neb. 516, 144 N.W.2d 73 (1966). We conclude that the undisputed facts fall within the Liability Coverage exclusion of the USFIC Garage Policy, and thus there was no duty to defend or indemnify.

CONCLUSION
Based upon our independent review of the question of law presented in this appeal, we conclude that the CRST trailer and its cargo were in the "care, custody, or control" of Neff Towing at the time of the alleged loss, thereby falling within the unambiguous Liability Coverage exclusion stated in the policy. We, therefore, reverse *612 the judgment of the district court granting Neff Towing's motion for summary judgment and overruling that of USFIC, and remand the cause to the district court with directions to vacate the judgment entered in favor of Neff Towing and to enter judgment in favor of USFIC in accordance with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
McCORMACK, J., not participating.